Michael O'ROURKE *v.* STATE of Arkansas

CR 87-17                              746 S.W.2d 52

Supreme Court of Arkansas
Opinion delivered March 14, 1988
[Rehearing denied April 18, 1988.]

58

*Witt Law Firm, P.C.*, by: *Ernie Witt*, for appellant.

*Steve Clark*, Att'y Gen., by: *Jack Gillean*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant was convicted of the capital murder of his parents, Beulah and Francis O'Rourke, which occurred in July, 1983. The trial was held in Yell County, Dardanelle District, and the jury imposed the death sentence. On appeal, appellant argues the trial court erred (1) in denying the appellant's motion for a change of venue; (2) in sentencing the appellant; and (3) in instructing the jury of pecuniary gain as an aggravating circumstance. Appellant also claims there was no substantial evidence to support the jury's finding of no mitigating factors in the sentencing phase. Having reviewed these points of error along with other objections as required by Rule 36.24, A.R.Cr.P. and Ark. Sup. Ct. R. 11(f), we find no reason to reverse and, therefore affirm the appellant's conviction.

Concerning his venue argument, appellant moved for a

change of venue under Ark. Code Ann. §§ 16-88-201 and -204 (1987), stating he could not receive a fair and impartial trial in either district of the county. To support his motion, he included the affidavits of Tommie Foster, Evelene Miller, and Connie Tillman, who were registered and qualified electors of the Dardanelle District of Yell County.[1]

In order to prevail on his motion, the appellant, under § 16-88-201, was required to show that the minds of the inhabitants of the county in which the cause is pending are so prejudiced against the defendant that a fair and impartial trial cannot be had in that *county. See also Richardson* v. *State*, 292 Ark. 140, 728 S.W.2d 189 (1987); *Berry* v. *State*, 290 Ark. 223, 718 S.W.2d 447 (1986). The affidavits submitted by the appellant failed to show such prejudice for two reasons: (1) the three affidavits failed to allege prejudice was county-wide, and instead stated that a fair trial could not be had in the Dardanelle district; and (2) while the affiants in their affidavits alleged prejudice in the Dardanelle district, their later testimony belied their earlier allegations of prejudice. For instance, Foster testified that she did not read the affidavit she previously had signed, and Miller and Tillman both testified that they did not have any opinion as to the prejudice in the community as a whole. In addition to the deficiencies found in appellant's proof offered in support of his motion, the state produced several witnesses who testified that the appellant could get a fair trial in Yell County.

The appellant also claims the seating of the jury itself illustrated prejudice against the appellant. Appellant points out that seventeen out of forty-nine prospective jurors (or approximately 34 percent) were excused by the court, because they had formed some opinion of the guilt or innocence of the appellant. However, appellant cites no cases, and we know of none, that have held that actual bias is said to exist in the community when a certain number of jurors are excused. While the judge found it necessary to excuse some of the prospective jurors, a jury of twelve was seated, and the jurors stated that they had not formed an opinion about the appellant's guilt or innocence and would

---

[1] Originally, appellant included five affidavits, but he withdrew two of the affidavits at the hearing on the motion because they were from the Danville District of Yell County.

make their decisions based only on the evidence heard in the trial.

██ As we previously have stated, there can be no error in the denial of a change of venue if an examination of the jury selection shows that an impartial jury was selected and that each juror stated he or she could give the defendant a fair trial and follow the instructions of the court. *Berry*, 290 Ark. 223, 718 S.W.2d 447. We conclude that the record before us reflects that a fair and impartial jury was seated by the trial judge, and the judge did not abuse his discretion in denying appellant's motion. *Richardson*, 292 Ark. at 141-42, 728 S.W.2d at 191.

██ Appellant next argues that the jury's finding that no mitigating factors existed was not supported by the evidence and that the jury should have at least found that the crime was committed while he was under extreme mental or emotional disturbance. We cannot agree. In *Miller* v. *State*, 269 Ark. 341, 605 S.W.2d 430 (1980), we held that it is a matter of judgment whether the facts support the jury's findings as to the issues of aggravating and mitigating circumstances, but we will not substitute our judgment for that of the jury that heard the evidence if there is a reasonable and understandable application of the facts to the statutory requirements. In applying that rule to the facts here, we discover at trial the appellant and the state presented conflicting expert testimony concerning appellant's mental state. Dr. Stevens, a clinical psychologist, opined that appellant suffered an extreme mental disturbance at the time the crime was committed, but the state's psychiatrist, Dr. Kaczenski, testified that, while appellant may have suffered from a severe personality disorder when the crime was committed, appellant was not out of touch with reality and knew the difference between right and wrong. In hearing this conflicting testimony, the jurors could, and obviously did, reasonably believe that appellant was capable of appreciating the wrongfulness of his conduct and was capable of conforming that conduct to the requirements of the law. *Id.* at 357-58, 605 S.W.2d at 440.

Appellant further contends the trial court erred in denying appellant's motion to postpone the sentencing proceeding and to order an evaluation of appellant's fitness to be sentenced. This contention has no merit.

Appellant, on three occasions, had been committed to the

State Hospital for evaluation and on the first two occasions, he was found unfit to stand trial. On the third evaluation, he had recovered and was determined fit to proceed to trial. After having been found guilty of murder and having received the verdict which recommended the death penalty, the appellant requested that the trial court make another determination as to appellant's fitness to proceed with sentencing, but the court refused. Appellant argues that, under the mandatory language of Ark. Code Ann. § 16-86-111 (1987), the trial court was required to postpone sentencing and to commit the appellant for observation and testing upon the appellant's counsel's request for evaluation alleging that appellant was incapable of understanding the proceedings. Section 16-86-111 superseded Ark. Stat. Ann. § 43-1303 (Repl. 1977), but the terms and requirements in both statutes are almost identical. In sum, both provisions provide that a hearing shall be held in the manner provided by law in any case in which the insanity of the defendant is alleged as a ground for postponing or not carrying out the execution of any sentence imposed as a part of the defendant's conviction.

We construed § 43-1303 in our earlier holding of *Murphy* v. *State*, 248 Ark. 794, 454 S.W.2d 302 (1970), and held that when insanity is claimed as a ground for postponement of sentence, the trial court is empowered to exercise its discretion. In *Murphy*, we were unable to say the trial court abused its discretion in denying the defendant's oral motion that the proceedings be postponed until a further mental examination could be conducted. Upon our review of the record, we believe the same holding is required here. In making his oral motion, counsel for appellant simply claimed that appellant was unfit to be sentenced and failed to recite any facts or circumstances to support his claim. The state previously had presented evidence that refuted appellant's insanity defense, and, in fact, Dr. Kaczenski testified that appellant was capable of assisting his attorney, but chose not to do so. Kaczenski explained that appellant was trying to manipulate the system by refusing to consult with counsel; he related that the appellant told him, "I could help my attorney, but I've decided I'm not going to say a word. I'm just not."

Based on the record before us, we cannot agree with appellant's contention that the trial court was mandated to commit appellant for a fourth evaluation. To the contrary, the

trial judge was very much aware of appellant's insanity defense during the three-year period this matter was pending against the appellant, and the judge properly had the appellant evaluated each time the facts warranted it. Appellant's last request for an evaluation was supported by nothing more than a bare allegation; on the other hand, the actual facts reflect appellant's request was nothing more than a manipulative attempt to avoid the sentencing. We believe the trial court was correct in denying appellant's motion.

Finally, the appellant, relying on *Collins* v. *Lockhart*, 754 F.2d 258 (8th Cir.), *cert. denied*, 106 S. Ct. 546 (1985), asserts he was denied due process. He argues his death sentence is invalid because the trial court instructed the jury on pecuniary gain as an aggravating circumstance and this aggravating circumstance, in violation of the eighth amendment, improperly duplicated an element of the robbery/murder offense with which he was convicted. This double-counting issue in capital murder cases was resolved by the Supreme Court's recent decision in *Lowenfield* v. *Phelps*, ___ U.S. ___, 108 S. Ct. 546 (1988). There, Lowenfield was sentenced to death by the Louisiana state courts, and he contended his sentence violated the eighth amendment because the single aggravating circumstance found by the jury, and upheld by the Louisiana Supreme Court, merely duplicated an element of the underlying offense of first-degree murder of which he was convicted at the guilt stage. In sum, the jury convicted Lowenfield under Louisiana's first-degree-murder statute, finding he had the specific intent to kill or to inflict great bodily harm upon more than one person. This element found in convicting Lowenfield of first-degree murder was the same as the one the jury found as the sole aggravating circumstance, which under Louisiana law, allowed the jury to impose the death sentence.

The Supreme Court in *Lowenfield* stated that, to pass constitutional muster, a capital-sentencing scheme must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder. The Supreme Court, in upholding Louisiana's sentencing scheme, explained the constitutionally-required-narrowing procedure as follows:

It seems clear to us from this discussion that the narrowing function required for a regime of capital punishment may be provided in either of these two ways: *The legislature may itself narrow the definition of capital offenses, as Texas and Louisiana have done, so that the jury finding of guilt responds to this concern, or the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase.* See also *Zant, supra,* at 876, n. 13, discussing *Jurek* and concluding, "in Texas, aggravating and mitigating circumstances were not considered at the same stage of the criminal prosecution."

Here, the *"narrowing function" was performed by the jury at the guilt phase when it found defendant guilty of three counts of murder under the provision that "the offender has a specific intent to kill or to inflict great bodily harm upon more than one person." The fact that the sentencing jury is also required to find the existence of an aggravating circumstance in addition is no part of the constitutionally-required narrowing process, and so the fact that the aggravating circumstance duplicated one of the elements of the crime does not make this sentence constitutionally infirm.* (Emphasis added.)

*Lowenfield,* ___ U.S. at ___, 108 S.Ct. at 555.

■ As was the case with Louisiana's death-penalty law which was considered in *Lowenfield,* the duplicative nature of Arkansas's statutory aggravating circumstance did not render the appellant's sentencing infirm since the constitutionally-mandated-narrowing function was performed at the guilt phase. The Constitution does not require an additional aggravating circumstance finding at the penalty phase.

Because we find no reversible error, we affirm.