Richard G. BENNETT *v.* STATE of Arkansas

CR 88-57                                        759 S.W.2d 799

Supreme Court of Arkansas
Opinion delivered November 21, 1988

*Martin, Vater, Karr & Hutchinson,* by: *W. Asa Hutchinson,* for appellant.

*Steve Clark,* Att'y Gen., by: *J. Brent Standridge,* Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Richard G. Bennett, was convicted on charges of first degree murder and was sentenced to life imprisonment. On appeal, Bennett argues the court erred: (1) in not directing a verdict based upon insufficiency of the evidence; (2) in admitting the deposition testimony of witnesses for the State when there was no showing that the

witnesses were unavailable for trial; (3) in not declaring a mistrial when the prosecution introduced a statement by Bennett not provided to the defense during discovery; (4) in admitting evidence in violation of Rules 401, 403, and 404(b) of the Arkansas Rules of Evidence; (5) in allowing cross-examination of witnesses for the defense concerning Bennett's marriages; and (6) in not declaring a mistrial due to improper comments by the prosecutor during his opening statement.

We reverse and remand because prejudicial error occurred when the court allowed the State to introduce the deposition testimony of material witnesses not shown to have been unavailable for trial. Bennett's remaining points are discussed to the extent they are relevant to a second trial.

Bennett's wife Marcia drowned in the Arkansas river on March 25, 1978. Bennett, the only eyewitness to the drowning, claimed that he and his wife had been fishing from an unfinished bridge near Morrison Bluff when Marcia fell from the bridge to the river below. At the time, the weather was misty, it was near freezing, and the river was flooding. Also, it was nighttime, and the wind was strong. Bennett told police that he first tried to rescue his wife by throwing her a rope.

Bennett's attempts at rescuing Marcia with the rope proved unsuccessful. Apparently, he went to the couple's car to get help while Marcia clung to one of the bridge supports or piers. Hearing his wife scream, Bennett returned but Marcia was no longer visible. Allegedly, Bennett jumped from the bridge into the river to save his wife. He later told authorities that he went for help after failing to locate Marcia.

Despite dragging operations and the efforts of an out-of-state diving team, Marcia Bennett's body was not found until April 4 when it surfaced near the bridge several hundred feet from where the alleged accident occurred. The medical examiner concluded that the cause of death was drowning, but he found no evidence that Marcia Bennett had been forcibly drowned and discovered no sign of external or internal injuries.

## SUFFICIENCY OF THE EVIDENCE

Bennett requested that the trial court direct a verdict on grounds that there was insufficient evidence to support a convic-

tion for first degree murder. The motion was denied. Bennett argues that the court erred. We disagree.

■ A challenge to the sufficiency of the evidence in the lower court and on appeal requires that this court address that issue even though the case is being reversed and remanded on other grounds. *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984). In considering the question, however, any errors allegedly committed by the trial court are disregarded. *Id.*

■ The issue is whether the verdict is supported by substantial evidence. Substantial evidence, whether direct or circumstantial, must be of sufficient force that it will, with reasonable and material certainty, compel a conclusion one way or the other. *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988). It is necessary to ascertain only the evidence favorable to the appellee and only that testimony which actually supports the verdict of guilt. *Id.*

■ The State's case was built entirely upon circumstantial evidence, which can be sufficient to sustain a conviction as it may constitute substantial evidence. *Still* v. *State*, 294 Ark. 117, 740 S.W.2d 926 (1987). In order for circumstantial evidence to be sufficient to support the finding of guilt in a criminal case, it must exclude every other reasonable hypothesis consistent with innocence. *Smith* v. *State*, 264 Ark. 874, 575 S.W.2d 677 (1979). However, whether the evidence excludes every other reasonable hypothesis is for the fact finder to determine. *Id.*

In the main, the State's proof was based on inconsistent statements made by Bennett to various authorities on separate occasions and on inconsistencies between those statements and the physical evidence obtained by officers investigating the drowning.

Dub Hamilton, the former sheriff of Logan County, was one of the first officers to interview Bennett. In a statement to Hamilton on March 26, Bennett described the first few moments before the incident as follows:

> Marcia and I were fishing side by side on the bridge. We had fished quite some time and she was cold. I told her we may as well quit. I reeled in one pole. As I was preparing to take the bait off and put the pole up, Marcia took a

> couple of steps toward her pole. The next thing I heard her
> yell and when I looked up, her and the lantern was gone.

Bill Kimbriel, Hamilton's chief deputy, testified that he did not recall that the second pole was rigged to fish when he found it on the bridge near where Marcia Bennett allegedly fell.

In a separate statement made on March 27 to Kimbriel and to John Bailey, a former criminal investigator for the Arkansas State Police, Bennett's story changed. He told Bailey that he had rigged his wife's pole for fishing and had returned to the car to get some more fishing tackle when he heard his wife scream. Already at the car, Bennett turned around and Marcia was gone from the bridge. Some three months later when visiting with Doug Stevens of the Arkansas State Police, Bennett again changed his story to reflect the earlier version given to Sheriff Hamilton.

There were other inconsistencies. At trial, Hamilton testified that on the night of March 25 he had noticed Bennett's glasses had mud with water on them. Bennett could not explain how his glasses had stayed on after he supposedly jumped from the bridge to the water below and then swam from pier to pier in search of his wife.

The height of the bridge was measured at 24 to 27 feet depending on the point of measurement on the bridge. The depth of the water around the bridge was estimated at three to five feet with isolated pools near the bridge supports measuring between eight to ten feet. At least once, Bennett maintained that he had not hit bottom when he jumped from the bridge. Deputy Sheriff Kimbriel testified from experience that a jump of 27 feet into water three to five feet deep would not only have caused Bennett to hit bottom but that the jump would certainly have buckled Bennett's knees and jarred his head upwards and that it would have been impossible for Bennett's glasses to stay on.

Bennett had also indicated to the officers that the current around the bridge had been very strong. Kimbriel testified that there was no current in the area. Hamilton also testified that there was no current in the waters surrounding the bridge near Morrison Bluff.

In light of evidence concerning the lack of current in the river, the State's case emphasized that Marcia Bennett's body

was not discovered until it surfaced four to five hundred feet from where Bennett claimed Marcia had fallen into the water nine days earlier. Hamilton testified that when the body surfaced, it remained absolutely stationary until removed by the medical examiner. Further emphasis was placed upon the fact that the body was not discovered anywhere near the site of the alleged fall despite extensive dragging operations.

Danny Sorey, an emergency medical technician, attended to Bennett for possible hypothermia or exposure on the night of the incident. Sorey testified that Bennett had been wearing slip-on type shoes, slacks, a tee shirt, and a shirt. Bennett told Sorey that he had been in the water for an hour or more.

Sorey testified that Bennett showed no signs of hypothermia and that his condition (i.e., body temperature, behavior, etc.) was inconsistent with Bennett's statement that he had been in the icy water for an hour or more. In his subsequent statement to Investigator Doug Stevens, Bennett stated that he could not remember how long he had been in the river.

Further testimony by Sorey revealed that Bennett's shoes, although wet, did not contain any mud or other residue from the muddy water or the river bottom. Bennett's wallet was wet, but the contents were dry.

Sorey indicated that Bennett was primarily concerned for the safety of about $800.00 in bills in his wallet and that Bennett never expressed sorrow about the possible death of his wife. Bennett also told Sorey that at one point he had "gotten ahold of his wife" but that the current pulled her away, a fact which Bennett failed to relate to either Kimbriel, Hamilton, or Bailey.

At trial, both Kimbriel and Hamilton described the clothing found on Marcia Bennett's body after it surfaced on April 4. She was dressed in thermal underwear, pants, a wool shirt, two sweaters, boots, and gloves. Officer Hamilton considered it significant that Marcia Bennett was found wearing gloves in light of statements by Bennett that when Marcia fell from the bridge into the water Bennett had told her to remove her jacket and a blanket, which she allegedly did. (Officers later recovered both the jacket and the blanket.) Hamilton testified that he thought it would have been very difficult for Marcia Bennett to remove her

jacket in the water while still wearing the gloves found on her nine days later.

■    In *Smith* v. *State*, 282 Ark. 535, 669 S.W.2d 201 (1984), this court affirmed a sentence of life imprisonment for first degree murder where the State's evidence was entirely circumstantial. We stated that guilt may be proved even in the absence of an eyewitness to the crime, and we emphasized that *false and improbable statements explaining suspicious circumstances are admissible as proof of guilt. Id.* at 358. Few statements of law have greater relevance to the evidence presented to the fact finder in the case at bar.

The State introduced additional evidence which was consistent with Bennett's guilt but which we need not detail in great length. Bennett's former girlfriend, Connie Mosier, testified by deposition that she had accompanied Bennett to the Morrison Bluff bridge prior to his marriage to the victim and that Bennett had commented, "This would be a good place to kill someone." Don Buckner, Bennett's insurance agent from Ohio, testified by deposition that Bennett called several times prior to the 1978 Arkansas trip to see if an insurance policy on Marcia Bennett's life had been approved and had come into the office. According to Buckner, Bennett picked the policy up on or about the day the couple left for Arkansas from Ohio. Bennett was the named beneficiary. Buckner also testified that Bennett was upset (after Marcia's death) when he discovered that the policy was not of the double indemnity type.

■    Based on the foregoing, we conclude that there is substantial evidence to support the verdict of guilt. As such, we find no error in the trial court's refusal to direct a verdict in Bennett's favor.

## INTRODUCTION OF DEPOSITION TESTIMONY

Before trial, the court allowed the defense to depose one of its out-of-state witnesses on grounds that the witness would be unavailable for trial due to recent surgery. Thereupon, the State sought to depose several of its out-of-state witnesses absent any showing that they would be unavailable at trial. The court granted the State's request as to witnesses Connie Mosier and Don Buckner even though it was conceded that the State could

probably secure the presence of these witnesses at trial. Bennett's counsel objected, but the objection, which was renewed before trial and just prior to introduction of the depositions, was overruled.

The depositions of Connie Mosier and Don Buckner were admitted pursuant to the provisions of Ark. Code Ann. § 16-44-202(d)(2) (1987), which provides:

> At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used if it appears . . . [t]hat the witness is out of the State of Arkansas unless it appears that the absence of the witness was procured by the party offering the deposition.

The trial court's conclusion that deposition testimony is permissible any time a witness is out-of-state overlooks the title, purpose, and general provisions of section 16-44-202.

Ark. Code Ann. § 16-44-202 is entitled "Deposing witnesses upon showing of inability to attend trial — Use of depositions." Subsection (a) states:

> *If it appears that a prospective witness may be unable to attend or be prevented from attending a trial* or hearing, that his testimony is material, and that it is necessary to take his deposition in order to prevent a failure of justice, the court at any time after the filing of an indictment or information may order . . . that his testimony be taken by deposition. [Emphasis ours.]

Subsection (a) makes clear that there must be some showing prior to trial as to the inability of the witness to attend before the court can order that the testimony of the witness be taken by deposition. Subsection (a) further requires a showing that taking of the deposition is necessary to prevent a failure of justice. If both requirements are satisfied, the court may, under subsection (d)(2), allow use of the deposition at trial *if* the party offering it shows that its witness is now dead, is out of the state, cannot attend because of sickness or infirmity, or failed to attend despite issuance of a subpoena. Here, the State not only failed to show that its witnesses could not attend trial and that there would be a failure of justice if the depositions were not permitted, but it was

actually conceded that the State could obtain the presence of the witnesses at trial.

Bennett also argues that introduction of the deposition testimony of Connie Mosier and Don Buckner violated his constitutional right of confrontation. The State responds that a defendant has two types of protection under the confrontation clause — the right to face the witnesses against him, and the right to cross-examine those witnesses. The State argues both rights were protected because Bennett's counsel was present when the witnesses were deposed, he was able to cross-examine them, and his cross-examination was with knowledge of the pending trial at which the depositions would be used. This position ignores a crucial point — the inability of the jury responsible for deciding a defendant's fate to judge credibility by observing the demeanor of the witnesses who must sit face to face with the accused at trial.

In *Lackey* v. *State*, 288 Ark. 225, 703 S.W.2d 858 (1986), the State had failed to make a "good faith effort" to obtain the presence of a witness whose transcribed testimony from a former trial was introduced at a subsequent trial. This court stated:

> While we do not renege on our conclusion that the Sixth Amendment does not require the confrontation with every witness every time a criminal defendant is retried, we find this witness' testimony to have been so significant as to require that the jury in whose hands the fate of the appellant rested be allowed to observe the confrontation so as to see the witness' demeanor and make its determination with respect to the matters addressed to him.

The rationale expressed in *Lackey* is equally applicable here. The deposition testimony of Connie Mosier and Don Buckner was obviously damaging to Bennett, and it was especially critical that the jury be able to observe these witnesses on the stand. It was error to allow their testimony by deposition without any showing that the witnesses could not attend trial.

Because we find that the trial court erred in its interpretation of section 16-44-202 and that it should not have allowed the State to take the depositions, we do not address Bennett's other argument to the effect that section 16-44-202 is unconstitutional as applied.

## STATE'S FAILURE TO DISCLOSE STATEMENT

Following the State's case in chief, the defense put on several witnesses — including Bennett. Bennett again claimed that the drowning had been accidental. To rebut that testimony, the State called the victim's daughter, Gloria Good (Bennett's stepdaughter). Good, who had taken the stand earlier, testified as a rebuttal witness in part as follows:

> Q. Did Richard Bennett ever tell you how your mother had died?
>
> A. Well, one time when he was hollering at me, he said — this was after — in a few weeks when we were still living with him, he told me that my mom hadn't really just fallen off the bridge, that she deliberately jumped off the bridge because she was tired of being my mother.

Bennett's counsel objected that the State had failed to disclose this prior statement during discovery notwithstanding requests for all such statements. Counsel also requested a mistrial, and in the alternative asked that a cautionary instruction be given. The court determined that the objection was well taken but that a mistrial was not warranted.

At the close of rebuttal, the defense renewed the motion for a mistrial. At this point the State advised the court that Gloria Good had notified the prosecution of Bennett's statement only minutes before she testified as a rebuttal witness. The court again denied the motion for mistrial.

In *Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981), the defendant, like Bennett, filed a timely request pursuant to Rule 17.1(a)(ii) of the Arkansas Rules of Criminal Procedure, which provides:

> Subject to the provisions of Rules 17.5 and 19.4, the prosecuting attorney shall disclose to defense counsel, upon timely request . . . any written or recorded statements and the substance of any oral statements made by the defendant or a codefendant.

In *Earl*, as here, the defendant took the stand in his own defense. Earl denied ever making an inculpatory statement

concerning the crime charged — other than a challenged confession. During cross-examination, he was asked if after his disputed confession he had stated to one officer that "he felt a lot better about getting that off his chest." The defense objected on the grounds that the State failed to disclose the prior statement during discovery. On rebuttal, the officer testified that the defendant in fact made the statement.

■ This court concluded in *Earl* that if our discovery rules are to be meaningful they *must be* complied with where: (1) there has been a timely request; (2) there is no finding of compliance by the State; and (3) there is prejudice to the defense. *Id.* at 13. In *Williamson* v. *State*, 263 Ark. 401, 565 S.W.2d 415 (1978), we held that Rule 17.1 imposes a duty upon the State to disclose to defense counsel, upon timely request, all material and information to which a party is entitled *in sufficient time to permit his counsel to make beneficial use thereof.* Any interpretation of Rule 17.1 to the contrary would indeed make a farce of the rule.

■ The State relies upon the prosecution's claim that it was unaware of the undisclosed statement by Bennett until moments before Gloria Good testified as a rebuttal witness. However, A.R.Cr.P. Rule 19.2 in relevant part provides:

> If additional material or information is discovered *during trial*, the party *shall notify the court and opposing counsel* of the existence of the material or information.

As such, there is a continuing duty of disclosure.

Rule 19.4, like *Williamson*, mandates that all materials and information to which a party is entitled must be disclosed in time to permit counsel to make beneficial use thereof. Neither the trial court nor Bennett's counsel had notice of the information subject to disclosure until after it was presented to the jury. In *Nelson* v. *State*, 274 Ark. 113, 622 S.W.2d 188 (1981), we pointed out that in "a line of cases we have consistently, without exception, held that the State must comply with the pretrial discovery rules." It is not that the evidence is necessarily inadmissible; rather, the problem is in the court's failure to enforce the discovery rules.

The State contends that there was no duty to disclose because Gloria Good was a genuine rebuttal witness and that Bennett is also unable to show how he was prejudiced. *McDaniel*

v. *State*, 294 Ark. 416, 743 S.W.2d 795 (1988); *Parker* v. *State*, 268 Ark. 441, 597 S.W.2d 586 (1980); and *Renton* v. *State*, 274 Ark. 87, 622 S.W.2d 171 (1981). We find the State's reliance on the "rebuttal witness" argument unpersuasive, *Earl, supra*, and we conclude that the evidence of prejudice is overwhelming.

The challenged statement by Gloria Good was the only evidence of any statement or act by Bennett which contradicted his other statements that the drowning had been accidental. The testimony likely had a devastating effect. Moreover, the court conceded that defense counsel's objection to the testimony was well taken. Had the State disclosed the statement to court and counsel before the testimony was elicited, as is required by our rules of discovery, counsel for the defense no doubt would have convinced the court that the testimony should not be admitted. *See also* A.R.Cr.P. Rule 19.7.

In *Earl, supra*, the trial court refused to grant defendant's motion for a mistrial even though it was evident that the State did not comply with our discovery rules. We reversed. The State's failure to comply with the rules of discovery in this case was of equal magnitude.

## *"HIT MAN" TESTIMONY*

Connie Mosier, Bennett's former girlfriend, lived with Bennett sometime in 1977. At that time, Bennett was married to Marilyn Bennett and the couple was getting a divorce. However, Bennett had not yet met his future wife Marcia — the drowning victim in this case. Connie Mosier's deposition was introduced at trial and it contained the following testimony:

> He [Bennett] said he was going . . . to make a phone call. . . . [W]hen he came back out of the phone booth, he said that he had made a phone call to somebody to have his wife killed, and that all he had to do was leave the keys, mail the keys either to this man or leave them with this man, to her apartment and he would take care of everything.

The testimony concerned Bennett's former wife Marilyn, and both before trial and prior to the introduction of Connie Mosier's deposition Bennett's counsel argued that admission of the testimony violated Rule 404(b) of the Arkansas Rules of

Evidence, which provides:

> Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The trial court overruled the objections on grounds that the evidence was admissible pursuant to the "other purposes" exception contained in Rule 404(b).

■ Because the proof may develop differently in the event of retrial, we do not rule on the propriety of the court's decision to admit the testimony. We do point out, however, that the issue is a close one. Ordinarily, the trial judge has wide discretion in admitting evidence of other crimes or wrongs and his decision will not be reversed absent an abuse of discretion. *Price* v. *State*, 268 Ark. 535, 597 S.W.2d 598 (1980). Other crimes evidence is admissible if it is independently relevant and the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Carter* v. *State*, 295 Ark. 218, 748 S.W.2d 127 (1988).

Obviously, the testimony was highly prejudicial. It is not so obvious that the evidence had great probative value, nor is it clear that the evidence truly provided proof of motive, plan, or knowledge. If the State's case was built around the theory that Bennett murdered his wife Marcia for financial gain, we note that there was not one shred of evidence that he stood to gain financially from the proposed "hit man" killing of his former wife Marilyn.

We trust that at a second trial both court and counsel will carefully weigh the need for admitting this evidence. *See Rowdean* v. *State*, 280 Ark. 146, 655 S.W.2d 413 (1983).

### *"GOOD PLACE TO KILL SOMEONE" — INSURANCE TESTIMONY*

In her deposition testimony, Connie Mosier alleged that she had on one occasion traveled to Arkansas with Bennett and while

at the Morrison Bluff river bridge Bennett allegedly commented, "This would be a good place to kill someone." Mosier also testified concerning attempts by Bennett to obtain life insurance for her with Bennett as the designated beneficiary. Bennett's counsel objected on grounds that the probative value of the evidence was outweighed by unfair prejudice. The court admitted the evidence over counsel's objections.

██ Whereas A.R.E. Rule 402 generally provides that all relevant evidence is admissible, Rule 403 provides that relevant evidence may be excused if its probative value is substantially outweighed by the danger of unfair prejudice. The question of prejudicial effect versus probative value is a matter addressed to the discretion of the trial judge, and on appeal this court will not disturb the trial court's decision in the absence of manifest abuse of that discretion. *See e.g., Harris* v. *State*, 295 Ark. 456, 748 S.W.2d 666 (1988).

Again, because the proof may develop differently in the event of retrial, we do not rule on Bennett's argument that the trial court erred in admitting the evidence.

## *MARRIAGES*

At trial, the defense called several witnesses to testify concerning Bennett's standing in the community and his general character for truthfulness. To rebut this testimony, the State was allowed to question the witnesses as to whether they were aware of Bennett's marital background — both past and present. The primary objection by the defense was that the State could have rebutted the credibility of Bennett's character witnesses without touching on the sensitive area of Bennett's many marriages. We agree.

██ A review of the record and the arguments of both parties convinces us that the trial court abused its discretion as to the scope of the State's cross-examination on this issue. Similar questioning should not be permitted on retrial if its sole purpose is to test how well character witnesses for the defense are acquainted with Bennett.

### PROSECUTOR'S COMMENTS DURING OPENING

Prior to trial of this case, a wrongful death judgment was entered against Bennett in Ohio in connection with the same incident. Before Bennett's trial for first degree murder in this state, the trial court directed the State not to make reference to the style of the Ohio judgment, the verdict, or the findings of the jury. However, during his opening statements, the prosecutor made the following comment:

> Richard Bennett denied knowing that he was even the beneficiary of Marcia Bennett's life insurance policy until after the accident occurred. Now, they had a trial, and this is a transcript of the trial, in which Richard Bennett testified to under oath . . . .

Bennett's counsel moved for a mistrial, which was denied by the court.

We find that the comment was highly prejudicial under the circumstances and assume that the State will not attempt, nor will the trial court allow, similar error to occur in the event of retrial.

Reversed and remanded.