Bruce Earl WARD *v.* STATE of Arkansas

CR 91-36                                    827 S.W.2d 110

Supreme Court of Arkansas

Opinion delivered February 24, 1992

*William R. Simpson, Jr.*, Public Defender, by: *Didi Sallings*, Asst. Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Bruce Earl Ward was convicted by a Pulaski County jury of the capital murder of Rebecca Doss. The jury imposed the sentence of death by lethal injection. On appeal, appellant raises six allegations of error, most of which are confined to the propriety of the death sentence. While we find no reversible error in appellant's conviction, we agree with appellant that prejudicial error occurred in the trial's sentencing phase. Consequently, we affirm appellant's conviction yet reverse the death sentence and remand for resentencing

Appellant's initial argument raises two challenges to the constitutionality of the capital murder statute, Ark. Code Ann. § 5-10-101 (Supp. 1991). As we have previously addressed appellant's constitutional arguments, our discussion will be brief. First, appellant argues that the homicide statutes' 1989 revisions, which upgraded "premeditated and deliberated" murder from first-degree murder to capital murder, violate the constitutional prohibition against sentencing guidelines that fail to sufficiently narrow jury discretion in death penalty cases.

■ Under Ark. Code Ann. § 5-4-604 (Supp. 1991), the death penalty may not be imposed unless the state can prove the existence of an "aggravating circumstance." In *O'Rourke* v. *State*, 295 Ark. 57, 746 S.W.2d 52 (1988), we emphasized the following language from the Supreme Court's decision in *Lowenfield* v. *Phelps*, 484 U.S. 231 (1988), where the Supreme Court explained that, in order to genuinely narrow the class of persons eligible for the death penalty, a state may choose between two capital sentencing schemes:

> The legislature may itself narrow the definition of capital offenses, . . . so that the jury finding of guilt responds to this concern, or the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase.

*O'Rourke, supra*, at 64, 56 (quoting *Lowenfield, supra*, at 246).

Under Arkansas' revised capital sentencing scheme, the constitutionally-required narrowing function is provided by the "aggravating circumstance" requirement at the penalty phase. Since appellant would not have been eligible for the death penalty in the absence of any aggravating circumstance, we find that the

sentencing scheme passes constitutional muster.

Appellant's second constitutional challenge is that the elements of "premeditated and deliberated" capital murder, section 5-10-101(a)(4), and the elements of "purposeful" first-degree murder, Ark. Code Ann. § 5-10-102(a)(2) (Supp. 1991), impermissibly overlap. We have previously rejected this argument based on the same rationale we have used to uphold capital felony murder and first degree felony murder. *Smith* v. *State*, 306 Ark. 483, 815 S.W.2d 922 (1991). As long as there is no impermissible uncertainty in the definitions of these offenses, the mere existence of any overlapping does not render a statute constitutionally infirm. *Sellers* v. *State*, 300 Ark. 280, 778 S.W.2d 603 (1989); *White* v. *State*, 298 Ark. 55, 764 S.W.2d 613 (1989); *Cromwell* v. *State*, 269 Ark. 104, 598 S.W.2d 733 (1980).

Appellant's second argument is that the trial court erred in restricting defense counsel's questioning of prospective jurors regarding the jurors' opinions of the death penalty. We have stated that the purpose of *voir dire* examination is 1) to gain knowledge for the intelligent exercise of peremptory challenges. *Bryant* v. *State*, 304 Ark. 514, 803 S.W.2d 546 (1991); *Sanders* v. *State*, 278 Ark. 420, 646 S.W.2d 14 (1983); Ark. R. Crim. P. 32.2. According to appellant, the restrictions imposed by the trial judge thwarted appellant's intelligent exercise of his peremptory challenges.

The abstract indicates that defense counsel asked prospective jurors several questions relating to whether they considered "life without parole" a serious penalty. Defense counsel then asked whether the juror believed in the death penalty. The court informed defense counsel that she could ask the jurors whether they were "in favor of or against" the death penalty. However, the court instructed defense counsel not to "go through all this other malarky" before eliciting the jurors' opinions of the death penalty.

The extent and scope of *voir dire* lies within the trial court's sound discretion, and we will not reverse absent a clear abuse of discretion. *Bryant, supra*. In this case, the trial court stated that the manner and phrasing of defense counsel's questions amounted to "intimidation." We cannot say that the limited

restriction imposed by the trial judge constituted an abuse of his sound discretion. *See also Ruiz* v. *State*, 299 Ark. 144, 772 S.W.2d 297 (1989).

Appellant's third allegation of error is that the trial court erred in refusing to suppress incriminating statements and drawings that the police obtained from appellant prior to and subsequent to appellant's arrest. Appellant's suppression argument is divided into two specific sub-arguments: first, he argues that the statements made prior to his arrest should have been suppressed because he made the statments before being informed of his *Miranda* rights; second, he argues that the evidence obtained after his arrest should have been suppressed because he did not knowingly, voluntarily, and intelligently waive his *Miranda* rights. In reviewing a trial judge's decision on a motion to suppress, this court makes an independent determination based upon the totality of the circumstances, and we reverse only if the trial court's ruling was clearly against the preponderance of the evidence. *Porchia* v. *State*, 306 Ark. 443, 815 S.W.2d 926 (1991).

Several police officers testified about the circumstances surrounding the discovery of the victim's body and appellant's apprehension. Office Mike Middleton testified that he was on his routine patrol during the early morning of August 11, 1989, when he noticed the absence of a clerk in the Jackpot store on Rodney Parham near Markham. After entering the store, calling for the clerk, and identifying himself as a police officer, Middleton radioed for backup help and exited the store. Middleton then observed appellant approaching from the store's restroom area towards a motorcycle. Middleton requested appellant to "hold on a minute," and informed appellant that the clerk was missing after appellant asked what was wrong. At that point, appellant told Middleton that he had been drinking hot chocolate in the store, that the clerk had given him a key to the restroom, and that the clerk was in the back.

Meanwhile, Office Stubenrauch, a backup officer had arrived, and Middleton asked Stubenrauch to detain appellant while Middleton reentered the store. Appellant repeated to Stubenrauch the earlier account he had told to Middleton, and also told Stubenrauch that the clerk has instructed him to use the

women's restroom. Officer Timmons, another backup officer, arrived shortly thereafter, and proceeded to check the store's restrooms. He found the body of the store's clerk, Rebecca Doss, in the floor of the women's restroom. At that point, appellant was arrested, handcuffed and searched, and advised of his *Miranda* rights. On the way to the police station, appellant stated that he had not hurt anybody, and again repeated his account of his encounter with the victim.

Appellant next spoke with police officers at approximately 5 a.m. the same morning, when Officers Stafford and Smith approached him in an interview room at the police station. The officers testified that appellant was again advised of his *Miranda* rights, that appellant understood his rights, and that appellant agreed to talk to the officers on the condition that his statement not be taped. Appellant refused to sign the waiver of rights form, yet told the officers that while he was at the Jackpot store, he had gotten the clerk to help him with the restroom key but had no knowledge of what had subsequently happened to the clerk. Appellant also indicated, on a drawing of the bathrooms, the location of the fixtures in the restroom he had used at the Jackpot Store.

■    Under Ark. R. Crim. P. 2.2, a police officer may request a person to furnish information by answering questions regarding the investigation of a crime. In situations where an officer has a "reasonable suspicion" that a suspect is involved in a crime, Ark. R. Crim. P. 3.1 provides that the officer may stop and detain the suspect for fifteen minutes or for such time as is "reasonable under the circumstances." While appellant argues that the statements made prior to his arrest should be suppressed because he was not advised of his *Miranda* rights, the *Miranda* warning is not required unless the statements were a result of custodial interrogation. *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988); *Shelton* v. *State*, 287 Ark. 322, 699 S.W.2d 728 (1985). *See also Weaver* v. *State*, 305 Ark. 180, 806 S.W.2d 615 (1991). The *Miranda* warning is not required for voluntary, spontaneous statements. *Shelton, supra*; *Hayes* v. *State*, 274 Ark. 440, 625 S.W.2d 498 (1981). In this case, the statements appellant made at the scene were clearly voluntary and spontaneous. As the record indicates that appellant's on-the-scene statements were not elicited by police questioning, the *Miranda* warning was not

required.

Appellant also argues that the statements and drawings he made while in custody should be suppressed because they were a product of police coercion. Appellant testified that he requested an attorney numerous times, and that the questioning officers attempted to coerce a confession by cajoling him and threatening him with a "taser" or stun gun. Appellant's suppression argument also relies on the fact that appellant did not sign a waiver form before making his custodial statements and drawings.

We have held that the failure to obtain an explicit waiver of rights form will not necessarily preclude a voluntary confession. *Cope v. State*, 293 Ark. 524, 739 S.W.2d 533 (1987). Rather, a confession may be upheld on the basis of an implied waiver. *Id.*; *Duncan v. State*, 291 Ark. 521, 726 S.W.2d 653 (1987). In this case, the trial judge heard considerable police testimony regarding the circumstances of appellant's custodial statements and drawings. While appellant's version of the circumstances differs considerably from that of the officers', we have held that any conflict in witnesses' testimony is for the trial court to resolve. *State v. Massery*, 302 Ark. 447, 790 S.W.2d 175 (1990); *Smith v. State*, 296 Ark. 451, 757 S.W.2d 554 (1988). Given the significant amount of evidence presented to the trial judge regarding the essential elements of a valid waiver, we find no clear error in the trial court's refusal to suppress.

Appellant's last three arguments for reversal allege errors in the sentencing phase of the trial. His fourth allegation of error is that the trial court erred in allowing the state to introduce photographs and police testimony concerning appellant's prior conviction of voluntary manslaughter in Pennsylvania. Under Ark. Code Ann. § 5-4-604(3) (Supp. 1991), proof that a defendant previously committed another felony involving violence establishes an aggravating circumstance, rendering the defendant eligible for the death penalty. In this case, appellant does not dispute that his prior manslaughter conviction constituted an aggravating circumstance. However, he argues that undue prejudice resulted from the admission of photographs and testimony concerning this prior conviction because the state could conclusively prove an aggravating circumstance with the prior conviction alone. We disagree.

In *Johnson* v. *Mississippi*, 486 U.S. 578 (1988), the Supreme Court held that a finding of aggravating circumstances based on a prior felony conviction could not stand if the prior felony conviction was later overturned. The Supreme Court noted that the prosecutor in *Johnson* had relied solely on the document of conviction, and had not introduced any evidence relating to the prior felony itself. *Id.* at 585. We recently relied on the *Johnson* holding in *Sanders* v. *State*, 308 Ark. 178, 824 S.W.2d 353 (1992), to remand a death sentence for resentencing. In the *Sanders* case, the state relied solely on the defendant's prior conviction to establish the aggravating circumstance of a previous felony.

In this case, if the state did not introduce evidence regarding the circumstances of appellant's prior manslaughter conviction, the validity of the jury's aggravating circumstances finding would remain contingent upon Pennsylvania not reversing appellant's prior conviction. In light of the *Johnson* holding, the probative value of the extraneous evidence increases significantly. However, we must still determine under Ark. R. Evid. 403 whether the probative value of the photographs and testimony is substantially outweighed by the danger of unfair prejudice.

We have held that the question of prejudicial effect versus probative value is a matter addressed to the discretion of the trial judge. *Bennett* v. *State*, 297 Ark. 115, 759 S.W.2d 799 (1988); *Harris* v. *State*, 295 Ark. 456, 748 S.W.2d 666 (1988). On appeal, this court will not disturb the trial court's decision in the absence of manifest abuse of that discretion. *Bennett, supra.* We have repeatedly applied our deferential standard of review to the admission of photographic evidence, *Qualls* v. *State*, 306 Ark. 283, 812 S.W.2d 681 (1991); *Robinson* v. *State*, 269 Ark. 90, 598 S.W.2d 421 (1980), and stated that photographs will not be excluded simply because they are gruesome. *Williams* v. *State*, 267 Ark. 527, 593 S.W.2d 8 (1979).

In this case, the photographs depicted the body of a young woman, naked from below the torso, lying in a wooded area with the contents of her purse strewn out beside her. These photos are not particularly gruesome and are black and white. A Pennsylvania police officer testified to finding the body and to the condition of the body. He testified that the woman had marks on her neck

and that the scraped condition of her knuckles indicated that she had been dragged. He further testified to discovering a photograph of appellant and appellant's phone number when he examined the contents of the victim's purse.

In this case, the photographs and testimony were relevant in establishing the aggravating circumstances of a previously committed felony, and in illuminating the facts for the jury's consideration. We discern no abuse of discretion.

Appellant's fifth allegation of error is that the trial court erred in admitting a collection of Pennsylvania documents relating to appellant's prior manslaughter conviction. State's Exhibit No. 18 contained a felony information charging appellant with murder, and an affidavit alleging that appellant raped and robbed the Pennsylvania victim. We agree with appellant that the admission of these unsubstantiated allegations was prejudicial error in the penalty phase of the trial.

The state offered no proof that appellant had previously committed the offenses of murder, rape and robbery. While we stated earlier that the state is not limited to admission of a prior conviction in proving that a defendant previously committed a prior felony, mere allegations do not constitute proof. *Walker* v. *State*, 304 Ark. 393, 803 S.W.2d 502 (1991). In this case, the prejudicial effect of the rape and robbery allegations was compounded by the photographs depicting an unclothed victim and the testimony regarding the strewn contents of the victim's purse.

During oral argument before this court, the state conceded error but contended that the erroneous admission of the allegations was harmless. Under Ark. Code Ann. § 5-4-603 (Supp. 1991), a majority of this court may use harmless error to affirm a defendant's death sentence only if we can ultimately conclude that the error would not have changed the jury's decision to impose the death penalty. In *Sanders* v. *State*, 308 Ark. 178, 824 S.W.2d 353 (1992), we refused to find harmless error in the defendant's death sentence because we could not conclude that, absent the error, the jury would have still imposed the death penalty. In the case, as in *Sanders*, our finding of error does not affect appellant's eligibility for the death sentence. However, we cannot conclude that the jury would have found that the aggravating circumstance of appellant's previous felony

justified a sentence of death if the jury had not been exposed to the unsupported allegations. Consequently, we reverse on this point and remand for resentencing. *Id.*, *Wilson* v. *State*, 295 Ark. 692-A, 752 S.W.2d 762 (1988).

We find no merit to appellant's final allegation of error. Appellant argues that the jury erred in finding no mitigating circumstances because appellant proved, as a matter of Pennsylvania law, that the definition of voluntary manslaughter includes the phrase "acting from serious provocation by the person killed."

█ Ark. Code Ann. § 5-4-605 (1987) provides a nonexclusive list of mitigating circumstances that the jury may consider. The list set out in section 5-4-605 consists of circumstances relating to the capital offense for which the defendant is being sentenced. While this list is not exclusive, and a defendant may submit other circumstances for the jury's consideration, we reject appellant's argument that the jury is compelled to find a mitigating circumstance based simply on the definition of the prior offense that established the aggravating circumstance. As appellant offers no authority to support his novel contention, we find no error in the jury's finding of no mitigating circumstances.

The record has been examined pursuant to Ark. Sup. Ct. R. 11(f) and find no additional prejudicial error. For the reasons stated above, we affirm appellant's conviction but reverse the death sentence and remand for resentencing.

HOLT, C.J., DUDLEY and NEWBERN, JJ., dissent in part; concur in part.

HAYS, J., concurs in part; dissents in part.

ROBERT H. DUDLEY, Justice, concurring in part; dissenting in part.█ The appellant was convicted of capital murder. The majority opinion holds that the trial court erred in allowing the State to prove that the appellant had been previously charged with murder, rape, and robbery, even though he was not convicted of those charges. I wholeheartedly agree with the majority in that holding. That error occurred in the sentencing phase of the bifurcated trial, and therefore, the majority reverses only the sentencing phase of the case. As a result, the case will go back to the trial court only to decide whether the appellant is again sentenced to die by lethal injection, or is to be sentenced to life in

prison without parole. I would agree with the majority that reversing for resentencing only was correct if I truly thought the appellant had received a fair trial in the guilt phase of the bifurcated trial. However, my review of this case under Rule 11(f) of the Rules of the Supreme Court and Court of Appeals leads me to the conclusion that the appellant did not receive a fair trial in the guilt phase. As a result, I would reverse and remand the whole case for retrial.

We have long held that a trial judge should manifest the most impartial fairness in the conduct of a trial, especially in a capital case. A trial judge is held in high esteem by the jurors, and any indication by a judge that he favors one side or the other might influence the minds of the jurors. In this case the trial judge allowed the prosecuting attorney and his deputies to approach the bench, but would not allow the defense attorneys to do the same. The trial judge seemed to delight in denying the defense the opportunity to approach the bench. The record reflects the following. At the suppression hearing all of the police officers testified that the appellant said he would not sign a waiver of rights form nor would he agree to a taped interview nor would he make a written statement. While the appellant was under arrest and in custody, he stated that he was at the service station, the victim allowed him to use the ladies' restroom, and he never saw her again. One of the policemen drew a diagram of both the men's and women's restrooms at the service station and asked the appellant to circle the one the victim unlocked for him. The bathroom that he marked, and said he was allowed into, was the one in which she was found murdered. The defense attorneys moved to suppress the diagram, and the trial court held a suppression hearing. The trial court denied the motion to suppress. Then, at the trial on the merits, during the testimony of detective Mark Stafford, the subject again came up, and defense counsel attempted to renew the motion to preserve his record. It came about as follows.

MS. LaRUE [Deputy Prosecutor]:

Q: Detective, I'm showing you what's now been marked State's Exhibit 14 and I'd ask you if you could identify this.

A: Okay. This is a diagram that I had drawn. I put the squares in reflecting where the store is. Also drew two

squares showing the men's restroom —

Q: Detective, I want you to hold that up and I want you to point to it in reference to it so the jury can know what you intended this to be.

A: This is the front door.

MR. DEVINE [Defense Attorney]:

Your Honor, I think she ought to move to have it introduced if she's going to use it as a piece of evidence.

THE COURT:

I agree with that. Have you got any objections to it?

MR. DEVINE:

Yes, Your Honor, I think objections have been noted on the record earlier on this and I would have the same objections at this time.

THE COURT:

Refresh the court's memory specifically. I don't remember what they were. Just tell me what they were.

MR. DEVINE:

Pardon me?

THE COURT:

Refresh the court's memory. I don't remember what the objections were. State them specifically. Just stay there. Just stay there.

MR. DEVINE:

Your Honor —

THE COURT:

Tom, step back. Step back and state them.

MR. DEVINE:

I can't approach the Bench?

THE COURT:

No. Step back and state your objections.

MR. DEVINE:

Your Honor, I think that under the Rules of Evidence I have a right to approach the Bench in order to make an objection.

THE COURT:

Mr. Devine, do you want to make your objection?

MR. DEVINE:

Yes, your Honor.

THE COURT:

State your objection. You may do so.

MR. DEVINE:

The same objection that we had before.

THE COURT:

Refresh the court's memory.

MR. DEVINE:

Your Honor, if I can approach the Bench I will.

THE COURT:

You may not. If it's a legal objection, you can make it from there.

MR. DEVINE:

It is a legal objection. I think under the Rules —

THE COURT:

Overruled. Go ahead.

MR. DEVINE:

of evidence I have a right to approach the Bench also.

THE COURT:

Overruled. Go ahead.

MR. DEVINE:

Note our exceptions for the record, your Honor —

THE COURT:

Note the insistence that the Defendant will not make the objection without a side bar of the Court.

MR. DEVINE:

Your Honor, I believe under Rule 103 of the Rules of Evidence —

THE COURT:

I'm aware of the rules.

MR. DEVINE:

— we have a right to approach.

THE COURT:

I have the same books you have, Mr. Devine. I'm aware of all of the rules.

MR. DEVINE:

Yes, your Honor, I know you are.

THE COURT:

Go ahead.

Record at 966-68.

Any fair-minded person would agree that the trial court placed the defense attorney in the position of making a Hobson's choice. He could either run the risk of waiving the issue or state his objection aloud. Although the jurors might not have understood that the defense attorney was trying to protect his record on suppression of the incriminating evidence, it was certainly clear to every juror that the defense attorney could not approach the bench. *Yet, that same morning the trial judge allowed the prosecuting attorney to approach the bench.* The trial judge later attempted to explain to the attorneys the reason for the difference in their treatment, as follows:

THE COURT:

Incidentally, for you and Mr. Devine, I don't let counsel approach the Bench. There's one time when you can approach the Bench and make a motion. That's at the end of the State's case and the end of the Defense's case for a directed verdict. The rest of the time make it out there. If you've got a legal argument, make it. If you haven't — If it's good, I'll grant it. If it's not, I won't.

But, now, the exception yesterday was that the prosecutor — And I allow the prosecutor to come to the Bench sometimes and make motions and objections because they can create mistrial. You all can't. Yesterday they wanted some security out there with Mr. Doss. And I think it was appropriate. I don't think it was necessary to approach the Bench. I think if you all had talked you could have agreed and told the court.

Record at 1150.

Regardless of the trial court's reasons, it was manifest to the jurors that the defense attorneys were not treated the same as the prosecuting attorneys. This is a subject we have often addressed. In *Fuller* v. *State*, 217 Ark. 679, 232 S.W.2d 988 (1950), we wrote:

". . . a judge presiding at a trial should manifest the most impartial fairness in the conduct of the case. Because of his great influence with the jury, he should refrain from impatient remarks or unnecessary comments which may tend to result prejudicially to a litigant or which might tend to influence the minds of the jury. By his words or conduct he may, on the one hand, support the character and weight of the testimony or may destroy it in the estimation of the jury. Because of his personal and official influence, uncalled for or impatient remarks, although not so intended by him, may give one of the parties an unfair advantage over the other." *Western Coal & Mining Co.* v. *Kranc,* 193 Ark. 426, 428, 100 S.W.2d 676, 677. Also, see *McAlister* v. *State*, 206 Ark. 998, 178 S.W.2d 67.

The requirement of Art. 7, § 23, of our Constitution, that "judges shall not charge juries with regard to matters of fact", applies as well to the credibility of witnesses and

the weight to be given their testimony as to the outright truth or falsity of what they say. *St. L.S.W. Ry. Co. v. Britton*, 107 Ark. 158, 154 S.W. 215. And it applies not only to what judges tell juries in the course of formal instructions but also to what they say in colloquys with lawyers in the jury's hearing.

*Id.* at 682-83, 232 S.W.2d at 990.

The action by the trial judge in this case might well have prejudiced the jurors against defense counsel, especially in view of a later comment by the trial judge during closing argument.

An error in the merits of the trial occurred as follows. State's witness Dale Danzeisen testified that between 2:20 and 2:26 a.m. he was in the service station where the murder occurred. The police found the victim's body at about 2:40 a.m., and because there were no eyewitnesses, witness Danzeisen's testimony was of extreme importance. On direct examination, witness Danziesen testified that the appellant was in the service station during the time he was there. On cross-examination he stated, "I did not stay around after the defendant came out of the door in a rage." Record at 1000. The fact that the defendant was at the service station *and in a fit of rage* could well have been a critical fact in the jurors' minds. This was a case with only circumstantial evidence. Immediately after testifying that the defendant had been in a fit of rage, the witness admitted that shortly after the murder he gave the police a written statement. In cross-examining the witness about this prior written statement, which did not mention the fit of rage, the following occurred.

MR. DEVINE [Defense Attorney]:

Okay. Where does it say he flew out the door in a rage on there?

MS. LaRUE [Deputy Prosecutor]:

Your Honor, I'm going to object. This is an improper question. First of all, he's asking Mr. Danzeisen to refer to a police report that's been written up by an officer . . . and then typed up.

MR. DEVINE:

Your Honor, he's identified it as his statement he gave to the police.

THE COURT:

I think he has. The form of the question may be a little bit troublesome. . . . But go ahead.

MR. DEVINE:

It doesn't say that on there, does it? In fact, what it says is, "He was talking to the clerk who I knew as Becky. When I opened the door, he turned around" —

MS. LaRUE:

Your Honor, I'm going to object.

THE COURT:

Sustained.

Record at 1005-06.

The ruling was in error. The appellant should have been allowed to impeach the credibility of the State's witness by showing that he had made a prior inconsistent statement. A.R.E. Rule 613; *McDaniel* v. *State*, 291 Ark. 596, 726 S.W.2d 679 (1987). This witness was one of the State's most important witnesses, if not the most important, and his testimony about the appellant's appearance at the scene just before the murder was critical.

Witness Danziesen also testified that about two weeks before the murder he had heard the appellant say to the victim: "I'd like to take you to the back room and fuck you up the ass." This testimony obviously lead the jurors to think that appellant was a vulgar person. A subsequent State's witness, Melissa Gabbard, knew the appellant and, on cross-examination, was asked if the appellant would use the kind of language that witness Danziesen had said he used. She said he would "not say things like that." The following then occurred:

MR. DEVINE [Defense Attorney]:

Did you ever hear him say anything like that?

MR. FRAISER [Deputy Prosecutor]:

Your Honor, I'm going to —

THE WITNESS:

No.

MR. FRAISER:

— object to this. I believe what they're doing is it goes to character.

THE COURT:

Sustained.

Record at 1083.

There was no motion to strike the "no" answer. There was a later objection by the State to another question on the basis that "it goes to character." The court sustained the objection. Whether the court was correct, *see* A.R.E. Rule 406 with regard to custom and habit, is not of consequence in view of the way the trial court later prejudiced the defense attorneys' credibility on the issue. That occurred during closing argument as follows:

MR. DEVINE [Defense Attorney]:

Mr. Danzeisen may have been by there that day. I think Mr. Danzeisen could have even done this. And it's really easy at that time to try to push it off on somebody else, especially if somebody else had been arrested that you can try to help put another load of dirt on that grave that we're burying Bruce Ward in. Because that's what we have. And it's very easy for Mr. Danziesen to say those things. But Melissa Gabbard gets up here and she says that Bruce Ward doesn't talk like that.

MR. PIAZZA [Prosecuting Attorney]:

Objection, your Honor. That was an objection and it was sustained by the Court.

THE COURT:

Ladies and gentlemen, disregard that. It's not in evidence. You'll remember the instruction at the time. This is argument of counsel. It's not evidence.

Record at 1127-28.

In summary, my Rule 11(f) review of the rulings by the trial court leads me to the conclusion that the whole case, not just the sentencing part, should be reversed for a fair retrial. Accordingly, I concur in part and dissent in part.

HOLT, C.J., and NEWBERN, J. join in this opinion concurring in part and dissenting in part.

STEELE HAYS, Justice, concurring in part, dissenting in part. The majority concludes that prejudicial error occurred in the penalty phase of the trial because State's Exhibit 18 contained references to murder, rape and robbery, whereas appellant was convicted of voluntary manslaughter. As to the charge of murder, no error can be assigned to this point. Page five of the exhibit (the verdict) was admitted without objection. It reads in part: "We the jury find the defendant, Bruce Earl Ward, on the charge of:

Murder:_____

Voluntary Manslaughter:_____GUILTY_____

Involuntary Manslaughter:_____

Thus the jury's awareness of the charge of murder was not preserved for review for the lack of an objection. Moreover, Officer Dominic DiPaolo of the Erie Police Department testified, without objection, that Janet Needham was strangled with the strap of her own purse. In fact, it was undisputed that appellant was charged with murder but the jury convicted on voluntary manslaughter. Thus no claim of error can be grounded on the fact that the appellant was charged with murder.

As to the rape and robbery, those were never issues in this case. They were never argued to the jury at any point, indeed, were never mentioned. The only reference to either throughout this record is buried in the fine print within a five page photocopy which is for all practical purposes illegible. (See attached). There is nothing to indicate the jury was even aware of them and, as counsel for the appellant noted (referring to this segment of Exhibit 18), "It takes a legal scholar to decipher all that." The state was not attempting to show that appellant was charged with rape or robbery. The state was attempting to show, as an aggravating circumstance, that appellant had committed a previ-

ous felony involving violence, and did so simply by offering a certified copy of his conviction papers from Pennsylvania where that conviction occurred.

When the exhibit was offered, the appellant readily agreed that pages four and five were admissible and made only a general objection to the relevancy of the remainder of the exhibit, although the trial court pointedly invited specific objection:

THE COURT:   Any objections?

[Counsel for Defense] Your Honor, I'd like to look at them.

(Thereupon, there was a pause in the proceedings; then the following proceedings occurred:)

THE COURT:   Any objections?

COUNSEL:   Your Honor, I do have some.

THE COURT:   On what grounds?

COUNSEL:   Your Honor, I think part of the State's exhibits would be inadmissible as to relevancy. They've clearly got a conviction and I think that, of course, would come in.

THE COURT:   *Well, let's take them one at a time and be specific.*

The first one apparently is a certified copy of the judgment that you have admitted that he got convicted of. Right?

COUNSEL:   It's more than that, your Honor. It's the other material that we would object to.

THE COURT:   Let me see the judgment.

*Specifically what is your objection to this?*

COUNSEL:   The first few pages, your Honor. I don't see that they're relevant. I mean clearly they have the judgment and commitment order and conviction of voluntary manslaughter. It takes a legal scholar to decipher all that. I think they've got it in the last two pages. And I have no problem with the last two pages.

THE COURT: Well, without going through this, is this the information, charging —

MRS. LaRUE: That's the information that was filed.

THE COURT: That's already before the jury. You asked about it. You asked on redirect that he was disappointed that he didn't get more.

I don't know what the prejudice is. They know this. So, if your only objection is relevancy —

COUNSEL: Your Honor, I think it's confusing to the issue.

THE COURT: Well, they probably couldn't understand this. And, if your objection is relevancy, I'll overrule it.

COUNSEL: That's my objection, your Honor.

THE COURT: Okay. I'll let it in for whatever weight they want to give it. His conviction for voluntary manslaughter is admitted. And that's what this purports to prove by the rules of evidence. So, we'll let that in. [My emphasis.]

Had counsel objected because the state had not offered evidence of rape or robbery and it would be prejudicial to the appellant for that part of the exhibit to be admitted, the alleged error might well have been averted. The incident illustrates why our cases recognize the need for specific objection so that trial errors will not occur by inadvertence. The case of *Moore* v. *State*, 304 Ark. 257, 801 S.W.2d 638 (1990), is instructive. The court had granted a motion to suppress the statement of a co-defendant implicating the appellant in various crimes, and appellant argued on appeal that the trial court erred in then admitting the statement. We said that there was no showing that appellant had requested that specific or implied references to her be expunged before introduction of the statement. "It cannot be said the entire statement [of the co-defendant] was inadmissible; therefore, the appellant had the burden of pointing out any alleged inadmissible portions at or prior to the admission of the statement."

As to the robbery, there is an additional reason why no error occurred. There was evidence of robbery properly before the jury from sources independent of Exhibit 18. Officer DiPaolo testified that Ms. Needham's purse was opened and its contents were scattered near her body. Other contents, including the appellant's photograph, had been thrown down a window well near where the body was discovered. State's Exhibit 16 depicts a scene consistent with that testimony. That evidence would, I suggest, support a conviction of robbery, it will certainly support the lesser standard of evidence applicable to the penalty phase.

The state is not required to prove the appellant was *convicted* of robbery in order to submit the aggravating circumstance to the jury—only that he *committed* the felony. Arkansas Code Ann. § 5-4-604 (Supp. 1990). Moreover, we have held that *any evidence*, even slight, of an aggravating circumstance justified submitting that issue to the jury. *Wainwright* v. *State*, 302. Ark. 371, 790 S.W.2d 420 (1990); *Miller* v. *State*, 269 Ark. 341, 605 S.W.2d 430 (1980). The state was entitled to prove the circumstances of the previous crime relevant to the issue of violence for such probative force as the jury might have given it. The crime of rape, having no evidentiary support, was admittedly not germane, but it's miniscule role in this trial could have been avoided by a proper objection and as it was neither argued nor even mentioned to the jury any error can be treated as harmless. *Ford* v. *State*, 276 Ark. 98, 633 S.W.2d 3 (1982). We have often said the law cannot guarantee a perfect trial, only a fair one.