Paul RUIZ and Earl Van Denton *v.* STATE of Arkansas

CR 87-174 772 S.W.2d 297

Supreme Court of Arkansas
Opinion delivered June 12, 1989

*Mark S. Cambiano, P.A.*, for appellant Paul Ruiz; *Robert S.*

*Irwin,* for appellant Earl Van Denton.

*Steve Clark,* Att'y Gen., by: *Clint Miller,* Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. This capital murder case has followed a long and tortuous path. Appellants were charged with robbery, kidnapping and murder of Marvin Ritchie and Opal James. They were twice found guilty and given death sentences and in the latest trial, involving only the issue of punishment, death sentences were again imposed. Those proceedings have been reviewed three times by this court, twice by the Court of Appeals for the Eighth Circuit, and once by the United States Supreme Court. One conclusion which might well be drawn from the foregoing litigation is that appellants' second trial was error free and our affirmance of those convictions and sentences in 1981 is now effectively reinstated. The state urges us to eschew that course, however, and to address appellants' current appeal from the resentencing trial on the merits. We concur in that view.

Some overview of the prior proceedings is essential to an understanding of the arguments. Appellants were serving life sentences in the Oklahoma State Prison at McAllister — Ruiz for armed robbery, Denton for murder. On June 23, 1977, they disappeared from a work crew. On the morning of the 29th they were seen near the town of Magazine in Logan County, Arkansas, driving a car with Louisiana license plates.

When the marshal of Magazine, Marvin Ritchie, and two employees of the Corp of Engineers, David Small and Opal James, who were working in Logan County, were found to be missing, a search party was organized and that afternoon two of the men were found handcuffed together in the trunk of Ritchie's car. Marvin Ritchie was dead and David Small was critically wounded. Ritchie had been shot in the back of the head and Small through the chest. Small survived to provide essential testimony against the appellants at all three trials. Two days later, the body of Opal James was found in a remote section of Montgomery County.

Appellants were tried and convicted in Logan County and sentences of death were imposed. Those convictions were appealed and the judgment was reversed upon a holding that the

trial court erred in denying a motion for a change of venue and in seating a jury incapable of rendering a fair and impartial verdict. *Ruiz and Denton v. State*, 265 Ark. 875, 582 S.W.2d 915 (1979).

Appellants were tried anew, this time in Conway County, and sentences of death were imposed. In the ensuing appeal the judgment was affirmed. *Ruiz and Denton v. State*, 273 Ark. 94, 617 S.W.2d 6, *cert. denied*, 454 U.S. 1093 (1981). State post conviction remedies were pursued and exhausted. *Ruiz and Denton v. State*, 275 Ark. 410, 630 S.W.2d 44 (1982), *cert. denied*, 459 U.S. 82 (1982).

Appellants next sought habeas corpus relief in the United States District Court for the Eastern District of Arkansas. That request was denied and appellants appealed to the Court of Appeals for the Eighth Circuit, where the judgment of the District Court was reversed on the grounds that the case was governed by *Grigsby v. Mabry,* 758 F.2d 226 (8th Cir. 1985), holding that so-called "death-qualified" juries, being conviction prone, are unconstitutional. *Ruiz v. Lockhart*, 754 F.2d 254 (8th Cir. 1985). The United States Supreme Court granted certiorari and vacated the decision of the Court of Appeals in the light of *Lockhart v. McCree*, 476 U.S. 162, 106 S. Ct. 1758 (1986), which upheld the constitutionality of "death-qualified" juries, reversing *Grigsby*. See *Lockhart v. Ruiz*, 476 U.S. 1112, 106 S. Ct. 1964 (1986). The case was remanded for consideration of issues which had been reversed by the Court of Appeals and on November 20, 1986, that court again reversed the District Court, this time on the premise that robbery was used both as an element of the crime of capital murder and as one of the aggravating circumstances found by the jury to justify the death penalty, which the court had, in *Collins v. Lockhart*, 754 F.2d 258 (8th Cir.), *cert. denied*, 474 U.S. 1013, 106 S. Ct. 546, 88 L.Ed.2d 475 (1985), held to be an impermissible duplication, resulting in what has been referred to as "double counting." The duplication issue had been pre- served by appellants, but not reached by the Court of Appeals in view of its reversal on the *Grigsby* argument. The court upheld the validity of Ruiz and Denton's convictions, but vacated the death sentences because of the use of pecuniary gain as an aggravating circumstance where robbery was an element of the

underlying capital crime.[1] The state was given a reasonable time to either retry the issue of punishment or reduce appellants' sentences to life without parole. The state proceeded to retry the appellants without the use of pecuniary gain as an aggravating circumstance and again the jury imposed a sentence of death, resulting in the present appeal. Appellants assert nineteen errors by the trial court. We find no merit in the arguments for reversal.

I

*The Resentencing Trial of the Appellants Violated the Ex Post Facto Provisions of the United States and Arkansas Constitutions and Denied Appellants Due Process and Equal Protection of the Laws.*

The statutory authority for resentencing trials in capital cases is Act 546 of 1983, codified as Ark. Code Ann. § 5-4-616 (1987). The act became effective on March 19, 1983, but purports to apply to any defendant sentenced to death after January 1, 1974. Appellants point out that the murders of Opal James and Marvin Ritchie occurred on or about June 29, 1977, and thus, they contend, Act 546 operates as an ex post facto law in violation of federal and state constitutions. We disagree.

We note that the decision of the Court of Appeals in *Ruiz* v. *Lockhart*, 806 F.2d 158 (8th Cir. 1986), upheld the validity of the appellants' convictions for capital murder, and specifically directed that the state have the option to either reduce the sentence to life without parole or retry the question of punishment. The state chose to retry the appellants.

■ Appellants have cited a number of our cases stating that sentencing provisions are substantive rather than procedural and that the sentencing provisions in effect at the time an offense occurs govern sentencing. *Jennings* v. *State*, 276 Ark. 217, 633 S.W.2d 373 (1982); *Easley* v. *State*, 274 Ark. 215, 623 S.W.2d 189 (1981); *Culpepper* v. *State*, 268 Ark. 263, 595 S.W.2d 220 (1980). However, those cases, and others like them, deal with attempts to apply a harsher sentence than was provided by law at

---

[1] The state concedes candidly that its failure to appeal that decision was attributable to a miscalculation of the time for appeal.

the time an offense was committed, rather than with changes in sentencing procedures. Act 546 in no way enlarges the punishment to which appellants were subjected, it simply permits that part of the trial which was not tainted by error, to survive, limiting the retrial to the issue of punishment. That change in the law is, we think, procedural rather than substantive. Moreover, it is enough to note that appellant's identical argument was advanced and rejected in *Pickens* v. *State*, 292 Ark. 362, 730 S.W.2d 230, 235, *cert. denied*, 108 S. Ct. 769, 98 L.Ed.2d 226 (1987). We reaffirm that position.

## II

### The Trial Court Erred in Failing to Grant Appellants a Severance of their Capital Murder Resentencing Trials.

Appellants submit that their motion to sever their trials was waived by them in reliance upon an assurance by the trial judge that if a conflict developed between defendants in the selection of jurors, a severance "would be mandated." Appellants urge that in spite of a number of disagreements between them over the seating of certain jurors, the trial judge reversed himself and denied severance. They maintain they should not be penalized for relying on the court's ruling.

We do not interpret the record in quite the same way. It is clear that appellants waived their motion for severance and no condition was tied to the waiver. Counsel for Paul Ruiz then argued that because the state would benefit by one trial rather than two, the defendants should each be allowed twelve peremptory challenges, rather than twelve between them, since they might disagree on which jurors would be good for the defense. That proposal was rejected, prompting defense counsel to ask if a conflict developed would a severance be granted. The trial court's response was, "that's the law."

We do not regard that exchange as a binding commitment by the trial judge to order a severance merely upon a purported disagreement between defense counsel over whether to strike or accept a prospective juror. We believe he was simply alluding generally to the law as reflected in A.R.Cr.P. Rule 22.3(b)(iii) and in the guidelines set out in *McDaniel and Gookin* v. *State*, 278 Ark. 631, 648 S.W.2d 57 (1983), indicating that the

trial court should continue to be sensitive to the advisability of a severance as the trial evolves. Severances are to be determined by the trial court on a case by case basis in the light of all attendant circumstances. It is an exercise of judicial discretion. *Spillers* v. *State*, 268 Ark. 217, 595 S.W.2d 650 (1980). A.R.Cr.P. Rule 22.3. We have held that when more than one defendant is being tried for capital murder, the number of peremptory challenges allotted to a side remains at twelve. *Wilkins* v. *State*, 292 Ark. 596, 731 S.W.2d 775 (1987). Thus there was no error in refusing to enlarge the number of peremptory challenges nor any abuse of discretion in denying severance on that ground. *Hallman and Martin* v. *State*, 264 Ark. 900, 571 S.W.2d 688 (1979).

## III

*Arkansas Code Annotated § 5-10-101 (1987), Et. Seq. and Arkansas Code Annotated § 5-4-602 (1987) are Unconstitutional Both on their Face and as Applied to the Facts of this Case.*

Appellants contend that Ark. Code Ann. § 5-10-101 (1987) [Ark. Stat. Ann. § 41-1301 (Repl. 1977)] under which appellants were charged, and Ark. Code Ann. § 5-4-602 (1987) [Ark. Stat. Ann. § 41-1501 (Supp. 1985)], under which they were tried, are: a) unconstitutionally vague and overbroad, b) permit the arbitrary imposition of the death penalty, c) do not make a proper distinction between capital murder and other types of murders, and d) abrogate the equal protection clause. Appellants point out that some thirteen states make no provision for the death penalty, whereas Arkansas and other states do. Therefore, the argument goes, the constitution's recognition that inalienable rights include life, along with liberty and the pursuit of happiness, renders the death penalty an unequivocal abrogation of the equal protection clause of the Fourteenth Amendment.

Appellants concede that these arguments have been rejected in many previous cases, but they urge that we reconsider *Swindler* v. *State*, 264 Ark. 107, 569 S.W.2d 120 (1978), *cert. denied*, 449 U.S. 1057 (1980); *Wilson* v. *State*, 271 Ark. 682, 611 S.W.2d 739 (1981); *Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981); *Ruiz and Denton* v. *State*, 273 Ark. 94, 617 S.W.2d 6 (1981); *Simpson* v. *State*, 274 Ark. 188, 623 S.W.2d 200 (1981);

*Abernathy* v. *State*, 278 Ark. 250, 646 S.W.2d 590 (1983); *Owens* v. *State*, 283 Ark. 327, 675 S.W.2d 834 (1984); *Cromwell* v. *State*, 269 Ark. 104, 598 S.W.2d 73 (1980); *Martin* v. *State*, 261 Ark. 80, 547 S.W.2d 81 (1977); and *Pew* v. *State*, 284 Ark. 234, 681 S.W.2d 307 (1984).

■ Appellants offer nothing in the way of new or compelling reasons why that array of case law should be overruled. That being so, we decline the invitation to change a position we regard as sound.

IV

*This Third Trial of Appellants, Due Solely to Prosecutorial Misconduct and Error Violates Fundamental Fairness and Due Process, and is in Direct Contravention of Both the Spirit and Application of the Fifth Amendment's Prohibition.*

The fourth argument, reduced to its elements, is that when two previous convictions are overturned on appeal, a third trial violates the due process and double jeopardy clauses of the Constitution. The argument rests on fundamental fairness, as appellants conceive it.

■ We cannot sustain the argument. Appellants have cited a number of cases dealing with double jeopardy, but nothing which supports the premise that because a case is reversed a second time it becomes fundamentally unfair to try an accused a third time. Nor do we find the argument so convincing that no authority is required. As noted earlier in this opinion, appellants' second trial was unanimously affirmed in this court and though twice reversed by the Court of Appeals (first on the *Grigsby* argument, then on the *Collins* argument) both reversals were based on constitutional theories which were rejected by the Supreme Court at the first opportunity. Thus we think it fair to say appellants have been the beneficiaries, rather than the victims, of a criminal justice system bent on providing exhaustive safeguards, especially where the ultimate penalty is involved. Numerous cases are cited by the state for the counter proposition that a successful challenge to a conviction on appeal does not give

rise to a former jeopardy bar to retrial or resentencing.[2]

## V

*The Trial Court Erred in Submitting Evidence of and Jury Instructions on Statutory Aggravating Circumstances.*

Argument five renews the theory that it is impermissible for an aggravating circumstance to overlap with an underlying element of the capital offense so that "double counting" occurs as proscribed by *Collins* v. *Lockhart*, 754 F.2d 258 (8th Cir.), *cert. denied*, 106 S. Ct. 546 (1985). While the current appeal was pending, the case of *Lowenfield* v. *Phelps*, 484 U.S. ___, 108 S. Ct. 546 (1988), was decided by the Supreme Court, which effectively reversed *Collins* v. *Lockhart, supra,* by holding that the Eighth Amendment was not violated where a single aggravating circumstance found by the jury in imposing a death sentence duplicated one of the elements of the underlying offense of first degree murder. On April 10, 1989, the Court of Appeals for the Eighth Circuit decided *Perry* v. *Lockhart*, 871 F.2d 1384 (8th Cir. 1989), specifically holding that the *Lowenfield* case had overruled *Collins* and, rather than announcing a new rule, *Lowenfield* merely applied a rule enunciated in *Jurek* v. *Texas*, 428 U.S. 262 (1976). The *Lowenfield* case accordingly was held applicable to *Perry*, though Perry's sentence preceded the *Lowenfield* decision.

Appellants concede that *Lowenfield* overruled *Collins*, but they contend that *Lowenfield* should not be retroactively applied to them.

■ We disagree with that proposition. The *Collins* rationale was never adopted by this court — in fact, we expressly rejected it in a number of cases, *Starr* v. *State*, 297 Ark. 26, 35, 759 S.W.2d 535, 546 (1988); *Gardner* v. *State*, 296 Ark. 41, 64-5,

---

[2] *Lockhart* v. *Nelson*, 109 S. Ct. 285, 289-90 (1988); *Justices of Boston Municipal Court* v. *Lydon*, 466 U.S. 294 (1984); *United States* v. *Tateo*, 377 U.S. 463, 466 (1964); *Green* v. *United States*, 355 U.S. 184, 189 (1957); *United States* v. *Ball*, 163 U.S. 662, 671 (1896); and *Timmons* v. *State*, 290 Ark. 121, 126-27, 717 S.W.2d 208, 212 (1986); *see generally*, Westen, *The Three Faces of Double Jeopardy: Reflections on Government Appeal of Criminal Sentences*, 78 Mich. L. Rev. 1001, 1034-44 (1980).

754 S.W.2d 519, 529-30 (1988); *O'Rourke* v. *State*, 295 Ark. 57, 63-4, 746 S.W.2d 52, 55-6 (1988). Nor are the appellants entitled to preserve in place a principle of law which has been held to be erroneous. See *Washington* v. *State*, 278 Ark. 5, 643 S.W.2d 255 (1982); *United States* v. *Sager*, 743 F.2d 1261 (8th Cir. 1984).

■ We reject, as well, the argument that the state failed to prove the existence of the aggravating circumstances. The circumstances of the crimes and the testimony of David Small provided an adequate basis for submitting to the jury the aggravating circumstance that the murders were committed to avoid arrest. The evidence of prior felony convictions was sufficient to sustain the submission of the aggravating circumstance of a previous felony involving the use or threat of violence.

■ The final phase of the argument is that the aggravating circumstances are vague and overbroad. We have considered and rejected that argument previously without disagreement by the Supreme Court. *Gregg* v. *Georgia*, 428 U.S. 153 (1976); *Gardner* v. *State*, 296 Ark. 41, 55, 754 S.W.2d 518, 525 (1988); *Snell* v. *State,* 290 Ark. 503, 518, 721 S.W.2d 628, 634 (1986), *cert. denied,* 108 S. Ct. 202 (1987); and *Collins* v. *State*, 261 Ark. 195, 200-01, 548 S.W.2d 106, 119-20, *cert. denied,* 434 U.S. 878 (1977).

VI

*The Trial Court Erred in Failing to Limit Prejudicial Pretrial Publicity and Subsequently Failing to Sequester the Jury.*

■ Appellants maintain as a sixth point of error that the trial court should have granted a motion by the appellants to impose a gag order on the news media, attorneys, court officials and law officers and also, should have granted a request that the jury be sequestered during the trial. These are matters which are necessarily left to the sound discretion of the trial court. *Henderson* v. *State*, 279 Ark. 414, 652 S.W.2d 26 (1982). That decision will not be disturbed on appeal in the absence of a clear showing of prejudice. *Perry* v. *State*, 277 Ark. 357, 642 S.W.2d 865 (1982).

Undoubtedly, few trials have generated the interest of the public and news media to equal this one. That fact was amply

illustrated by the reversal of the first trial by a unanimous court due to a pervasive climate which prevented a fair trial. But undoubtedly that environment has been altered by the lapse of twelve years and the removal of the trial to a locale well away from the county where the offenses occurred. We need not examine every item inveighing for or against sequestering the jury or for imposing a gag order; suffice it to say the evidence appellants point to gives little, if any, support for their motion and they have not demonstrated either prejudice or an abuse of the trial court's discretion.

## VII

*The Trial Court Erred in its Sua Sponte Excusal of Almost One Half of Petit Jury Panel and Its Subsequent Failure to Provide Indigent Defendants With Funds to Investigate the Quashing of Said Panel.*

Four hundred and three venire persons were subject to call as potential jurors for the resentencing trial of appellants. It appears that as many as 198 of that number were excused by the trial judge for various reasons — illness, vacation and the like. Some persons could not be contacted or were thought to be dead or unavailable. All of this resulted in some ninety prospective jurors appearing for service on the morning of trial. Appellants moved to quash the panel and for funds to investigate the panel's composition from a constitutional standpoint. Appellants contend the mass excusals constituted an abuse of the trial judge's authority and deprived them of a jury representing a fair cross section of the community. The trial court denied the motions but granted a request that additional jurors be called as the process of jury selection began.

We note at the outset the absence of any suggestion that the discrepancy in the number of venire persons scheduled for jury service, some four hundred and three individuals, and the number actually appearing, around ninety, was the result of any attempt to influence the makeup of the jury panel. The explained absences, as well as the unexplained, are typical of the problems encountered in summoning large numbers of people to appear for jury service and the conflicts which they perceive as valid reasons not to serve. The record, in other words, presents

nothing extraordinary with respect to the composition of this pool of potential jurors. Thus the ninety or so from which twelve were selected can be assumed to be as fairly representative of a cross section of the community as four hundred would have been, the only difference being quantitative. That being so, we find nothing compelling in the motion to quash the panel nor requiring deeper scrutiny into the matter. Ark. Code Ann. § 16-31-103 (1985) exempts certain professions and vocations from service on grand or petit juries and empowers the circuit judge to excuse anyone when for *any reason* the interest of such individual or the public will be materially impaired by attendance.

In *Berna* v. *State,* 282 Ark. 563, 670 S.W.2d 434 (1988), a case also involving alleged irregularities in the jury panel and its selection, we made it clear that the appellant must demonstrate prejudice as well as any error. Here appellant has not only failed to demonstrate prejudice, but any error as well. We find no showing of abuse by the trial court's handling of these issues. *Miller* v. *State,* 269 Ark. 341, 605 S.W.2d 430 (1980); *cert. denied,* 450 U.S. 1035 (1981); *Collins* v. *State,* 271 Ark. 825, 611 S.W.2d 182, *cert. denied,* 452 U.S. 973 (1981).

## VIII

*The Trial Court Erred in Failing to Grant Appellants' Repeated Requests for a Mistrial Based on the Prosecutor's Inadmissible and Prejudicial Remarks Throughout the Trial.*

We find no abuse of discretion in the refusal by the trial court to order a mistrial on the basis of remarks by counsel for the state. The argument consists of a general discourse on the resentencing trial aimed in part at the defense position that the circumstances of the murders could not be given the jury in a resentencing trial. That contention is considered and rejected under Points IX and X.

As to improper remarks, appellants cite to a reference by the prosecutor to this "nightmare of a case" in opening statement. We have reviewed the bases for this argument and find nothing which would mandate a mistrial by the trial court. We have said that mistrial is a remedy so drastic and extreme that it must manifestly appear that the trial cannot proceed before a

mistrial must be ordered. *Combs* v. *State*, 270 Ark. 496, 606 S.W.2d 61 (1980).

■ Appellants also complain of a reference to both appellants being on "death row" which should, they maintain, have prompted a mistrial. There is no merit to this argument. The reference to death row by the prosecutor was an off-hand reference in a question to a witness, and the intimations were not entirely clear. But in any case, there was no objection when the reference was made and the defense in fact then examined the same witness, and twice made the same death row reference in its own examination. In was only when defense counsel was through examining the witness that an objection to the prosecutor's reference was made. By failing to object at the first opportunity, and joining in the same alleged error, appellants waived any objection.

## IX

### *The Trial Court Erred in Allowing Irrelevant and Highly Prejudicial Evidence and Testimony.*

Appellants take the position that the proof at the resentencing trial should have been restricted to aggravating and mitigating circumstances. It was, they maintain, error to permit David Small, for example, to testify about the events surrounding the death of Marvin Ritchie and about the near fatal wound Small sustained. They equate Small's testimony with a "victim's impact statement" which, in *Booth* v. *Maryland*, 483 U.S. 1056, 107 S. Ct. 2529, 96 L.Ed.2d 440 (1987), was held to be inadmissible. They complain that such testimony and photographs of the body of Marvin Ritchie were irrelevant and prejudicial. In short, appellants contend the only information which can be given to the jury in a resentencing trial is that which concerns the issue of aggravation and mitigation and the details of the crime itself are irrelevant.

■ We disagree with that perception of a resentencing trial and hold that the circumstances of the crime or crimes are not beyond the scope of the jury's inquiry. Such a concept of resentencing would be counter to the plain wording of the act itself. Ark. Code Ann. § 5-4-616(4) expressly provides that exhibits, testimony and other evidence *from the prior trial and*

*sentencing* shall be admissible to the resentencing procedure. We think the state's argument is compelling — that the nature of the crime itself is essential to the jury in determining whether death is an appropriate or inappropriate punishment, toward which the consideration of aggravating-mitigating circumstances are necessary guides.

Nor do we regard the testimony of David Small as comparable to the type of testimony which was rejected in *Booth* v. *Maryland, supra*. Booth was convicted of murdering an elderly couple who lived nearby. The motive for the crime was robbery and, since the couple could identify Booth, the victims were bound, gagged and stabbed repeatedly with a kitchen knife. Maryland, by statute, required the use of a presentence report in all felony cases which included a victim impact statement describing the effects of the crime on a victim and his or her family. Family members of the elderly couple described outstanding personal qualities of the victims and of the fear, lack of sleep and depression experienced by the family. A son said his parents were "butchered like animals," a daughter concluded that she could not forgive the murderer and such a person could "never be rehabilitated." Others described the effects of the crime on a wedding of one family member occurring a few days afterwards. The report concluded with an expression by the compiler that the murders posed a "shocking, painful and devastating memory to them that permeates every aspect of their daily lives. It is doubtful that they will ever be able to fully recover from this tragedy and not be haunted by the memory of the brutal manner in which their loved ones were murdered."

We need not review the testimony in the light of this argument. It is enough to say that nothing comparable occurred in the resentencing trial of these appellants.

## X

*The Trial Court Erred in Allowing the Introduction of Irrelevant and Highly Prejudicial Photographs (Plaintiff's Exhibits 12 and 13).*

Appellants objected to the introduction of two black and white photographs of Marvin Ritchie lying in the trunk of the car where his body was found. The argument that they are inflam-

matory and irrelevant is renewed on appeal.

█ As to the photographs being inflammatory, we find no merit in the argument. There is nothing lurid or odious in them. No blood is visible and the face of Marvin Ritchie is turned away from the camera. The body is relaxed. A small bullet hole can be seen, but would easily go unnoticed if the viewer were not alert. The use of these photographs and others was upheld in both previous appeals.

As to the relevancy argument, we need not repeat what was said under Point IX concerning the introduction of evidence of the crimes at a resentencing trial. The evidence on resentencing is not wholly limited to the aggravating and mitigating circumstances.

## XI

*The Trial Court Erred in Allowing the Introduction of Unauthenticated Prison Records and in Subsequently Instructing the Jury as to Aggravating Circumstances Based Solely on Those Records.*

The same three aggravating circumstances were submitted to the jury with respect to both appellants: 1. that at the time of the capital murder the defendant was unlawfully at liberty after being sentenced to imprisonment as a result of a felony conviction; 2. that the defendant previously committed another felony, an element of which was the use or threat of violence to another person, or creating a substantial risk of death, or serious physical injury to another person; and 3. that the capital murder was committed for the purpose of avoiding or preventing an arrest.

The jury found all three aggravating circumstances applicable to appellant Denton, but declined to find that appellant Ruiz had previously committed another felony involving the use or threat of violence to another person.

Appellants contend that the state relied upon the testimony of Ms. Bobbi Burns for the first and second aggravating circumstances. When Ms. Burns was called to the stand, appellants were granted permission to voir dire her concerning two documents she had brought with her from the Oklahoma State Prison, where she was the manager of prison records. Appellants objected to the two

documents on the grounds that they were not certified and were hearsay. The arguments are wholly without merit. One document, state's exhibit No. 2, purports to be a judgment of the District Court of Oklahoma County, Oklahoma, reciting that on April 13, 1971, Earl Van Denton entered a plea of guilty to the crime of murder, for which a sentence of life imprisonment was imposed. The judgment is signed by District Judge Harold C. Theis and attested to by Dan Gray, Court Clerk, by Mary Evelyn Moncrief, Deputy Clerk. Moreover, the judgment bears a more recent certificate by Tom Petusky, Court Clerk, dated July 8, 1987, declaring that the judgment is a true and correct copy of an original instrument which appears of record in the District Court of Oklahoma County, Oklahoma.

The other document, state's exhibit No. 1, purports to be a copy of a judgment of the District Court of Custer County, Oklahoma, reciting that on August 9, 1976, Paul Ruiz pled guilty to the crime of robbery with a firearm with a sentence of life at hard labor imposed. The judgment bears the signature of Charles M. Wilson, District Judge, and the "Filed" stamp of the Court Clerk, Irene Pruitt. Accompanying the judgment are three certificates: one signed by Irene Pruitt on April 12, 1978, and certifying that the judgment has not been set aside or annulled and is now in full force and effect; another by Charles M. Wilson, attesting to the fact that Irene Pruitt is the Court Clerk of Custer County and that her accompanying signature is genuine. The third certificate is by Ms. Pruitt attesting to the fact that Charles M. Wilson is the duly qualified and acting District Judge and that his signature appearing thereon is genuine. Thus, we find these documents to be certified and authenticated. Moreover, Ms. Burns testified that these documents accompanied appellants to the prison and were a part of their prison file, of which she was custodian. We conclude that these documents were not subject to a hearsay objection, A.R.E. Rule 803(22), McCormick on Evidence, § 318 (3rd Ed. 1984), and were properly received in evidence. *Montgomery* v. *State*, 277 Ark. 95, 640 S.W.2d 108 (1982).

## XII

*The Trial Court Erred in Allowing a State Psychologist to Testify as to the Prior Criminal History and Potential*

*Dangerousness of Appellants Where Such Testimony was Based on Appellants' Admissions Contained in State Psychiatric Hospital Records.*

Appellants offered the opinion testimony of Dr. Douglas Stevens, a clinical psychiatrist. Relying in part on the records of the Arkansas State Hospital, Dr. Stevens reviewed childhood and adult experiences of both appellants and expressed his opinion that they were mellowing with age. He pointed to a number of factors on the side of rehabilitation. He believed that neither had demonstrated significant behavioral problems in prison and both were capable of making a meaningful contribution to society.

To rebut this testimony the state called Dr. James Moneypenny, who had reviewed the records of several institutions (Arkansas State Hospital and prisons in California and Oklahoma), though he had not personally interviewed either appellant. Dr. Moneypenny's testimony included reference to Paul Ruiz having run away from home as a teenager, and committing burglaries to support himself.

 Appellants submit it was error to permit Dr. Moneypenny to testify "to the future dangerousness of the appellants," citing *Estelle* v. *Smith*, 451 U.S. 454 (1981), that such testimony violated their Miranda rights, and was a breach of A.R.E. Rule 404(b), since other crimes were mentioned. Assuming, without deciding, that such testimony was improper in this context, it was stricken upon a motion for mistrial and the jury was instructed to disregard it. No explanation is offered as to how the appellant's Miranda rights might have been affected by the information in these records and we will not attempt to respond to an argument lacking entirely in specificity.

The argument that Dr. Moneypenny's testimony violates the rule against "future dangerousness" announced in *Estelle* v. *Smith,* 451 U.S. 454 (1981), appears to be raised initially in this court, probably for the reason that nothing in the testimony of this witness equates with the proof in *Estelle*. Dr. Moneypenny testified that the appellants had chronic behavioral problems and that while age produces some lessening of energy, or mellowing, the personality remains essentially the same. Except for such inferences as might be drawn from that testimony, which we think insufficient, Dr. Moneypenny's testimony is devoid of any

allusion to future dangerousness.

Another reason exists to distinguish this case from *Estelle*. In *Estelle*, the state called the psychiatric witness to testify to the future dangerousness of the accused, even though the defense had not first put such factors in issue. In this case, however, Dr. Moneypenny's testimony was offered in *rebuttal*, a distinction which the court expressly noted in *Estelle*. *See Buchanon* v. *Kentucky*, 483 U.S. 402 (1987).

## XIII

*The Trial Court Erred in Allowing Testimony Concerning Post Conviction Bad Acts of One Appellant at a Joint Trial of Appellants.*

Appellants' argument on this point is an extension of the severance issue. They complain that Ruiz was prejudiced by proof which related only to Denton and Denton by proof relating only to Ruiz. To illustrate, they say there was no evidence of prior violence by Ruiz, whereas Denton had a prior conviction for murder.

We note initially that there was no contemporaneous objection below to the evidence now objected to, waiving any argument on appeal. Appellants however, would not prevail on this argument in any case. Appellants cite *Bruton* v. *United States*, 391 U.S. 123 (1968). But *Bruton* lends no support for their premise. The holding of *Bruton* is that a defendant's Sixth Amendment right of confrontation forbids a state from introducing the confession of one defendant to implicate a co-defendant in the crime for which both are being tried. In that situation if the co-defendant whose confession is introduced declines to testify, the other defendant has no opportunity to cross-examine. Nothing similar occurred in this case.

It is worth noting that the trial court instructed the jury to consider the evidence against each defendant separately and to render its verdict as if each defendant was being tried separately. The verdict demonstrates that the jury understood and implemented that instruction in that aggravating circumstance No. 2 was found as against Denton but not as against Ruiz.

## XIV

*The Trial Court Erred in Refusing Appellants' Proffered Jury Instruction Nos. 43 and 44.*

The trial court rejected appellants' proposed jury instructions which were altered versions of AMCI 1509, using instead the standard AMCI 1509 without modifications. The changes proposed by appellants substituted the word "may" for "will" in instructing the jury in choosing between death or a lesser penalty. Appellants contend that the wording of AMCI 1509 imposes a mandatory death penalty. We disagree.

The wording of the instructions is such, we believe, that a jury readily understands that it has the option of a lesser penalty. The instructions tell the jury that "in no event" will it return a verdict of death unless it unanimously makes three written findings which include a finding that "the aggravating circumstances justify beyond a reasonable doubt the sentence of death." Thus a jury is told that it may reject the death penalty simply by declining to make that essential finding. This same argument, in varying shades, has been rejected repeatedly in prior cases: *Starr* v. *State*, 297 Ark. 26, 759 S.W.2d 535 (1988); *Burnett* v. *State*, 295 Ark. 401, 749 S.W.2d 308 (1988); *Hill* v. *State*, 289 Ark. 387, 713 S.W.2d 233 (1986); *Clines, et al.* v. *State*, 280 Ark. 77, 656 S.W.2d 684 (1983); *Collins* v. *State*, 261 Ark. 195, 548 S.W.2d 106 (1977).

## XV

*The Trial Court Erred in Refusing Appellants' Proffered Jury Instruction No. 41.*

The trial court refused an instruction proffered by the appellants which told the jury it could consider in mitigation any lingering doubt it might have as to appellants' guilt. It was not error to refuse this proposed instruction. *See Franklin* v. *Lynaugh*, 487 U.S. 164 (1988); *Mitchell* v. *State*, 527 So.2d 179 (Fla. 1988).

## XVI

*The Trial Court Erred in Denying Appellants' Motions for a New Trial.*

■ Appellants both filed motions for a new trial consisting of a reiteration of arguments previously advanced and rejected. There was no abuse of discretion in the trial court's denial of these motions. *Foster* v. *State*, 294 Ark. 146, 741 S.W.2d 251 (1987).

## XVII

*The Trial Court Erred in Denying Motion to Dismiss Information as Violative of the Fifth Amendment's Requirement of Indictment by a Grand Jury.*

■ Appellants renew the contention that a defendant must be charged by an indictment returned by a grand jury instead of an information. The argument is not new and has never prevailed. *McCree* v. *State*, 266 Ark. 465, 476, 585 S.W.2d 938, 944 (1979); *Ellinburg* v. *State*, 254 Ark. 199, 208, 492 S.W.2d 904, 910 (1973); *Davis* v. *State*, 246 Ark. 838, 841, 441 S.W.2d 244, 246-7 (1969), *cert. denied*, 403 U.S. 954 (1971); *Beckwith* v. *State*, 238 Ark. 196, 379 S.W.2d 19 (1964); *Moore* v. *State*, 229 Ark. 335, 337-38, 315 S.W.2d 907, 908-09, *cert. denied*, 358 U.S. 946 (1959); and *Penton* v. *State*, 194 Ark. 503, 510-12, 109 S.W.2d 131, 135-6 (1937).

## XVIII

*The Trial Court Erred in Excusing for Cause Prospective Petit Jurors for Reasons Pertaining to their Views About the Death Penalty.*

■ Appellants ascribe error to the excusal of two panelists from the venire: Ms. Grace Williams, excused for cause by the trial court, and Ms. Flo Hesselbein, excused by a peremptory challenge from the state. No error is shown. Ms. Williams made it clear that the death penalty was not an option for her and the state's excusal of Ms. Hesselbein by peremptory challenge did not offend due process.

## XIX

*The Trial Court Erred in Refusing to Allow Appellants' Counsel to Voir Dire Prospective Petit Jurors on the Presumption of Life Without Parole in this Capital Murder Resentencing Trial.*

Appellants' final point is that they should have been allowed to ask the jury panel on voir dire whether they could obey a presumption that appellants were entitled to life without parole unless the state proved beyond a doubt that they deserved the death penalty. We first note that appellants cited no authority to the trial court nor on appeal, to support such a proposition, and we could not say the trial court's refusal to grant the request was an abuse of the sound discretion it is granted in these matters. *Finch* v. *State*, 262 Ark. 313, 556 S.W.2d 434 (1977). In any case, the argument is waived. While ostensibly arguing that the issue was important enough that all jurors be voir dired on the matter, the request was not made until after the tenth juror was selected. Failing to make the request at the first opportunity, the argument is waived on appeal.

In conclusion it should be stated that nothing in this record bespeaks the faintest likelihood that justice has miscarried on the question of guilt. The evidence that the appellants are the perpetrators of these murders is overwhelming and irrefutable. Not a shred of evidence to the contrary has been presented at any trial. As to the propriety of the punishment, three juries in separate locales and in proceedings which have spanned a decade have determined that death is the appropriate sentence for each appellant. In short, the criminal justice system has given these appellants a full measure of due process.

Under Ark. Code Ann. § 16-91-113 (1987) [Ark. Stat. Ann. § 43-2725 (Repl. 1977)], as put into effect by our Rule 11(f), we consider all objections brought to our attention in the abstracts and briefs in appeals from a sentence of life imprisonment or death. In this case we find no prejudicial error in the points argued or in the other objections abstracted for review.

AFFIRMED.