COURTNEY HUDSON GOODSON, Associate Justice 1 iPetitioner Bruce Earl Ward moves this court to recall the mandate on his appeal affirming the circuit court’s denial of post-conviction relief. Ward identifies three issues that he suggests amounted to a defect or breakdown in the appellate process to support recalling the mandate. First, he points out that his postconviction petition was unverified. Second, he alleges that he was incompetent at the time of the post-conviction hearing; and third, he argues that his counsel performed deficiently by failing to raise any issue of mental health or competency in the postconviction proceedings. We conclude that Ward has failed to establish the extraordinary circumstances necessary to justify a recall of his postconviction appeal mandate, and we deny his motion. In 1990, a jury convicted Ward of capital murder and imposed the death penalty. On appeal, this court affirmed his conviction but reversed his sentence due to a prejudicial error that occurred during the sentencing phase of the trial. Ward v. State, 308 Ark. 415, 827 S.W.2d 110 (1992) (Ward I). On remand, a jury again sentenced Ward to death, but we reversed based on an error made by the court reporter. Ward v. State, 321 Ark. 659, 906 S.W.2d 685 (1995) (per curiam) (Ward II). Thereafter, a third jury sentenced Ward to death, and we affirmed his sentence. Ward v. State, 338 Ark. 619, 1 S.W.3d 1 (1999) (Ward III). Ward then filed a petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.5, which the circuit court denied after a hearing. On appeal, we affirmed the circuit court’s denial of relief. Ward v. State, 350 Ark. 69, 84 S.W.3d 863 (2002) (Ward IV). Ward has now petitioned this court to recall the mandate in Ward IV based on the three aforementioned reasons. This court will recall a mandate and reopen a case only in extraordinary circumstances. Robbins v. State, 353 Ark. 556, 114 S.W.3d 217 (2003). To establish the extraordinary circumstances that would warrant the recall of a mandate or the reopening of a case, we have enumerated certain factors to be considered, namely: (1) the presence of a defect in the appellate process, (2) a dismissal of proceedings in federal court because of unexhausted state-court claims, and (3) the appeal is a death case that requires heightened scrutiny. Roberts v. State, 2013 Ark. 57, 426 S.W.3d 372. We have held that these factors are not necessarily to be strictly applied but rather that they serve as a guide in determining whether to recall a mandate. Nooner v. State, 2014 Ark. 296, 438 S.W.3d 233. In this case, Ward first argues that we should recall the mandate because his postconviction petition was unverified, and he asserts that the lack of verification constitutes a defect in the appellate process sufficient to support recalling the mandate in his | ¡¡postconviction appeal, citing to our decision in Wooten v. State, 2010 Ark. 467, 370 S.W.3d 475. The State argues that we should not follow Wooten because the appropriate relief for a defendant in a death case who has filed an unverified postcon-viction petition is to allow the defendant to verify his petition and supplement the record so that this court may review the substance of his postconviction appeal. In light of the fact that this court previously reviewed Ward’s postconviction appeal despite the unverified petition, the State contends that such relief in this instance would be moot. The requirement for verification is found in Arkansas Rule of Criminal Procedure 37.1(c) and requires the petitioner to execute an affidavit swearing that the petitioner has read the petition and that the facts stated in the petition are true, correct, and complete to the best of petitioner’s knowledge and belief. This court has held that the verification requirement for a postconviction-relief petition “is of substantive importance to prevent perjury.” Boyle v. State, 362 Ark. 248, 250, 208 S.W.3d 134, 136 (2005). Furthermore, we have routinely affirmed the denial of post-conviction relief where the petition is not verified. See, e.g., Butler v. State, 2014 Ark. 380, 2014 WL 4649476 (per curiam). However, in the unique case involving a defendant sentenced to death, we have remanded, rather than summarily affirming the denial of postconviction relief, so that the defendant can verify his petition and supplement the record with the verified petition. Howard v. State, 366 Ark. 453, 236 S.W.3d 508 (2006). Keeping the foregoing principles in mind, we hold that Ward has failed to establish a defect or breakdown in the appellate process because this court has reviewed his ^postconviction appeal, notwithstanding the unverified petition. Pursuant to our decision in Howard, Ward’s remedy for submitting an unverified petition in his direct postconviction appeal would have been limited to a remand to allow him to verify his petition and to supplement the record, followed by an appeal of his original postconviction petition. Because we failed to identify that Ward’s petition was unverified, we proceeded with our review of his postconviction appeal. As a result, Ward received the same appellate process he would have received if we had noted the unverified petition and followed the procedure outlined in Howard. Consequently, the failure of this court to acknowledge his unverified petition enured to his benefit. Accordingly, we cannot say that there was a breakdown or defect in the appellate process. We recognize that our holding today is in conflict with our decision in Wooten, supra. In Wooten, this court reached a different result by erroneously relying on Collins v. State, 365 Ark. 411, 231 S.W.3d 717 (2006). While both Collins and Wooten involved unverified postconviction petitions, it was the cumulation of postcon-viction errors that resulted in a breakdown of the appellate process in Collins. Specifically, the circuit court appointed numerous counsel to represent Collins in his postconviction proceeding, but none were qualified under Rule 37.5 and none had filed a compliant postconviction petition. Eventually, the circuit court held a hearing purportedly to adjudicate his Rule 37.5 claims, but the arguments addressed in the hearing were not contained in the unverified petition. In short, at no point did Collins receive a hearing or appeal on any postconviction petition he | ¿filed. On appeal, this court held that the multitude of problems in Collins’s Rule 37.5 proceeding amounted to a “breakdown in the appellate process,” and we remanded to allow him to file a new petition. Thus, the holding and relief in Collins turned on the fact that his postconviction hearing and appeal were not based on a written petition, as opposed to the lack of verification. Ergo, the majority in Woolen erred by oversimplifying the decision in Collins to justify its holding that the lack of verification itself constitutes a defect or breakdown in the appellate process. As a general rule, we are bound to follow prior case law under the doctrine of stare decisis, a policy designed to lend predictability and stability to the law. Low v. Ins. Co. of N. Am., 364 Ark. 427, 220 S.W.3d 670 (2005). However, we are not bound to follow a previous decision when there has been palpable error in legal analysis. Nooner v. State, 2014 Ark. 296, 438 S.W.3d 233. The Wooten court’s reliance on Collins is such an error, and resulted in a holding that is out of step with the rest of our jurisprudence on the verification requirement and recalling the mandate. Accordingly, we hereby overrule it. In dissent, Justice Baker maintains that we should recall the mandate in this case, as this court lacked jurisdiction to hear Ward’s postconviction appeal because his Rule 37.5 petition was unverified. With all due respect, this position fails for two reasons. First, this court has routinely afforded lenient treatment to otherwise jurisdictional issues in capital cases because of the unique nature of the death penalty. Indeed, while we have recognized the principle that the requirements of Rule 37 are jurisdictional in nature, we have held that rule | fiin abeyance where the death penalty has been imposed. See, e.g. Jackson v. State, 343 Ark. 613, 37 S.W.3d 595 (2001). For instance, in Jackson, we declined to impose a jurisdictional bar where the appellant had failed to file a timely petition under Rule 37.5, noting that the general rule against jurisdiction did not apply. We stated, If the present case were a non-capital case, then the general rule would certainly be that the time limits set forth in Rule 37 are jurisdictional in nature and would apply ... However, because this is a capital case involving the death penalty and involving Rule 37.5, it calls on this Court to address whether due process requirements of fundamental fairness compel the circuit court to address appellant’s Rule 37 petitions on their merits. Jackson, 348 Ark. at 616-617, 37 S.W.3d at 597. Thus, we have refused to impose strict, jurisdictional restrictions on the requirements of Rule 37.5 and have instead allowed capital defendants to obtain appellate relief notwithstanding shortcomings that, in a non-capital case, would have circumvented this court’s jurisdiction. See Coulter v. State, 340 Ark. 717, 13 S.W.3d 171 (2000) (per curiam) (reviewing appeal despite untimely notice of appeal); Porter v. State, 339 Ark. 15, 2 S.W.3d 73 (1999) (reviewing appeal despite untimely Rule 37.5 petition). Accordingly we have held that “fundamental fairness, in this narrowest of instances where the death penalty is involved, dictates an exception.” Porter, 339 Ark. at 19, 2 S.W.3d at 76 (emphasis in original). Second, the question here is whether Ward has established a defect or breakdown in the appellate process. As noted above, Ward received the process to which he was entitled, despite his unverified petition, because we reviewed his postconviction arguments on appeal. In short, we exercised jurisdiction over his appeal, which, in light of our historically lenient 17treatment of jurisdictional issues in death-penalty cases, is precisely what we would have done if we had identified the lack of verification. Ward’s next justification for recalling the mandate is that he was mentally incompetent during his Rule 37.5 proceedings, resulting in a breakdown in the appellate process sufficient to justify recalling the mandate. Ward argues that our decision in Roberts, supra, supports his position that his alleged mental incompetence during his Rule 37.5 proceedings requires recalling the mandate. Ward misconstrues our holding in Roberts. In Roberts, the defendant initially waived his right to appeal in 2000. Fol-' lowing court-ordered competency evaluations, the circuit court ruled that Roberts was competent to waive his right to appeal. In 2003, this court affirmed Roberts’s conviction on direct appeal, including the circuit court’s findings that he had competently waived his right to appeal. One month later, Roberts appeared pro se before the circuit court and waived his right to postconviction relief. The circuit court reviewed the previous evaluations performed in 2000 and ruled that Roberts’s waiver of postconviction relief was knowing and voluntary. We reviewed his post-conviction proceedings and upheld the circuit court’s findings. In 2012, Roberts filed a motion to recall the mandate, arguing that a timely mental evaluation was necessary to determine whether he had made a knowing and voluntary waiver of his postconviction rights. We held that the evaluations used by the circuit court and this court in regards to Roberts’s competency to waive his postconviction rights were insufficient because they had occurred over three years prior to the post-conviction shearing and were focused on competency to stand trial rather than competency to elect execution. The instant case is markedly different from Roberts. The issue in Roberts was the defendant’s competency to waive post-conviction rights. In this case, Ward did not waive his postconviction rights. In fact, Ward’s appointed counsel presented arguments to the circuit court on Ward’s behalf and to this court on appeal. Thus, unlike Roberts, where the defendant had made no postconviction arguments and received no postconviction process as a result of his waiver, here, Ward received a postconviction hearing and appeal. More fundamentally, unlike in Roberts, where the circuit court was required to make a finding regarding Roberts’s competency to waive postconviction relief, we have no rule or caselaw mandating a circuit court to make a finding of general competency to proceed in a postconviction matter. Roberts involved a waiver of post-conviction relief, which is governed by Arkansas Rule of Criminal Procedure B7.5. That rule mandates that a circuit court appoint postconviction counsel for a defendant if it finds that the defendant is indigent and either accepts the appointment of the attorney or is unable to make a competent decision about whether to accept or reject an attorney. Thus, the circuit court is required to review a defendant’s competency and make a finding thereon if the defendant seeks to waive his postconviction rights. Ark. R.Crim. P. 37.5. Accordingly, pursuant to Rule 37.5, the circuit court in Roberts was mandated to make express findings regarding Roberts’s competency, and in doings so, the circuit court relied on studies that were over three years 19old. In reviewing the circuit court’s findings, we failed to note the age of the evaluations and affirmed the circuit court’s finding of competency. In our decision recalling the mandate, we held that the circuit court had failed to make a proper determination regarding competency, and that we had failed to uncover its error. In contrast to the facts in Roberts, the circuit court in this instance was under no obligation to determine Ward’s competency under Rule 37.5 prior to adjudicating his postconviction claims, as he did not waive his postconviction rights. Because the court was not required to and did not make a finding on Ward’s competency, we did not review his competency as part of Ward IV. As a result, he has failed to point to an error that this court made or overlooked in its review of his postconviction proceedings appeal and has failed to show grounds to recall the mandate on this issue. Ward’s final argument is that we should recall the mandate in his postcon-viction appeal because his postconviction counsel failed to adequately address his mental issues during his postconviction hearing. Specifically, Ward argues that his counsel failed to raise the issue of his competence at trial as well as in his post-conviction hearing and also failed to argue that Ward was wrongly denied the assistance of an independent mental-health expert at trial. Essentially, Ward’s argument is that we should recall the mandate in his postconviction appeal because his counsel was ineffective. Ward contends that the concurrence in Wooten, supra, allows a claim for recalling the mandate based on ineffective assistance of counsel. We do not entertain a claim for recalling the mandate based solely on allegations of 1 ^ineffective assistance of postconviction counsel. As we have held, recalling the mandate is an extremely narrow remedy reserved for unique situations; to enlarge it to allow typical claims of ineffective assistance of counsel would alter the nature of the relief entirely. In Lee v. State, 367 Ark. 84, 238 S.W.3d 52 (2006) (Lee I), we did recall the mandate where postconviction counsel was intoxicated and impaired during the course of the proceedings. Following the mandate recall, Lee received a new postconviction hearing. Thereafter, Lee petitioned this court to recall the mandate in his case again, arguing that his new postconviction counsel was ineffective. We explained that there is a fundamental difference in ordinary claims of ineffective assistance of counsel and the extraordinary circumstances presented in Lee I. Lee v. State, No. CR-08-160, slip op. at 2, 2008 WL 4277400 (Ark. Sept. 18, 2008) (unpublished per curiam) (Lee II). Thus, because Ward’s claims are that his counsel was merely ineffective, and not impaired or intoxicated as in Lee I, he has not presented legal grounds to recall the mandate. Motion denied. Danielson, Baker and Hart, JJ., dissent.