JOHN DAN KEMP, Chief Justice
Appellant Bruce Earl Ward appeals an order of the Jefferson County Circuit Court denying a motion for preliminary injunction and dismissing his complaint against Governor Asa Hutchinson, Wendy Kelley, Director of the Arkansas Department of Correction (ADC); Randy Watson, Warden of Varner Supermax Unit; and Benny Magness, Chairperson of the Arkansas Board of Corrections (collectively "the State"). For reversal, Ward argues that the circuit court erred in dismissing his complaint because Arkansas Code Annotated section 16-90-506(d)(1) (Repl. 2016)[1] violates his constitutional guarantees of due process, pursuant to the United States and Arkansas Constitutions, and the doctrine of separation of powers, pursuant to the Arkansas Constitution. We *859 reverse the circuit court's dismissal of Ward's complaint and remand to the circuit court for further proceedings consistent with this opinion.
I. Facts
In 1990, a Pulaski County Circuit Court jury convicted Ward of capital murder for the death of Rebecca Doss and sentenced him to death by lethal injection. This court affirmed his death sentence in three separate appeals. Ward v. State , 338 Ark. 619, 1 S.W.3d 1 (1999) (affirming death sentence); Ward v. State , 321 Ark. 659, 906 S.W.2d 685 (1995) (per curiam) (reversing death sentence because the record was insufficient and remanding for a new sentencing trial); Ward v. State , 308 Ark. 415, 827 S.W.2d 110 (1992) (affirming capital-murder conviction; reversing death sentence because of an evidentiary error).
On February 28, 2017, Governor Asa Hutchinson issued a warrant scheduling Ward's execution for April 17, 2017. On March 29, 2017, Ward filed a complaint requesting injunctive and declaratory relief. In his complaint, Ward challenged his competence to be executed and requested a hearing. On April 7, 2017, Ward filed his amended complaint and alleged that (1) his execution would violate his right to freedom from cruel and unusual punishment as protected by the Eighth and Fourteenth Amendments to the United States Constitution, because he was incompetent and unable to comprehend a punishment of death; (2) the State had violated the prohibition against cruel and unusual punishment, pursuant to the United States Constitution and article 2, section 9 of the Arkansas Constitution, because solitary confinement had exacerbated his mental condition; (3) section 16-90-506 did not comport with the due-process requirements of the United States and Arkansas Constitutions and was unconstitutional on its face and as applied; (4) section 16-90-506(d)(1) violated the Eighth and Fourteenth Amendments as set forth in Ford v. Wainwright , 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), and Panetti v. Quarterman , 551 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007), by statutorily assigning the competency-for-execution decision to the Director; and (5) the Director's determination of Ward's competence violated the state constitutional guarantees of the separation of powers by purporting to confer such authority on the Director. In support of his complaint, Ward submitted the psychological evaluations of Dr. William S. Logan and affidavits of trial counsel and postconviction counsel.
On April 5, 2017, the State moved to dismiss Ward's amended complaint for failure to state a claim under Rule 12(b)(6) of the Arkansas Rules of Civil Procedure. The State asserted that, "as a matter of law, [Ward] was not denied due process when he was not given a hearing"; that section 16-90-506(d)(1) was not unconstitutional on its face or as applied to Ward; that section 16-90-506(d)(1) did not violate the separation-of-powers provision of the Arkansas Constitution; and that there was no legal basis to enjoin Ward's execution. The State contended that the circuit court lacked jurisdiction to stay an execution and that the procedure in section 16-90-506(d)(1) was a proper exercise of executive-branch authority. The State further asserted that Ward's civil-rights claims regarding his confinement were barred because (1) he had not exhausted his administrative remedies, (2) the allegations were untimely, (3) his claims were collateral attempts to challenge the lawfulness of the death sentence, and (4) the State was immune from suit. The State filed a motion to dismiss Ward's amended complaint on April 11, 2017.
Ward filed an objection to the State's motions to dismiss and stated, inter alia ,
*860 With the complaint pending before the court, Mr. Ward has set forth and further intends to augment via Dr. Logan's evaluation and imminent reporting, the requisite showing ... [to] permit, pursuant to a 'substantial threshold showing,' a proper competency-for-execution hearing pursuant to Panetti v. Quarterman , 551 U.S. 930, 949, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007), and Ford v. Wainwright , 477 U.S. 399, 409-10, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986).
On April 13, 2017, the circuit court entered its order denying Ward's motion for preliminary injunction and granting the State's motion to dismiss Ward's complaint. In its order, the circuit court ruled,
Although [Ward] titles his motion as one seeking a preliminary injunction, it is a request to stay his execution. The law is clear. A circuit court lacks jurisdiction to stay an execution. The motion [for preliminary injunction] is DENIED.
The circuit court also dismissed Ward's complaint, ruling,
The [State has] sovereign and statutory immunity, [Ward] has failed to exhaust his remedies [on his claims concerning confinement], and [Ward] has failed to state a claim for which the court can grant relief. The case is DISMISSED.
That same day, Ward filed an emergency notice of appeal. On April 17, 2017, this court granted an emergency stay of execution filed by Ward. He now brings his appeal from the circuit court's order of dismissal.
II. Procedural Issues
Before reaching the merits of Ward's arguments, we address certain threshold procedural issues raised by the State.
A. Standing
The State argues that Ward does not have standing to pursue a declaratory judgment. The State contends that "the statute has yet to be applied to Ward, so he lacks standing." The State avers that because Ward failed to request the Director to render an opinion on his competency, he lacks standing to challenge the statute.
As a general rule, one must have suffered injury or belong to a class that is prejudiced in order to have standing to challenge the validity of a law. Morrison v. Jennings , 328 Ark. 278, 943 S.W.2d 559 (1997). To have standing to attack the constitutionality of a statute, the appellant must show that the questioned act had a prejudicial impact on him or her. Tauber v. State , 324 Ark. 47, 919 S.W.2d 196 (1996) ; Garrigus v. State , 321 Ark. 222, 901 S.W.2d 12 (1995).
Because of his death sentence, Ward clearly has a personal stake in the outcome of this case. In 1997, he received his third and final death sentence. Governor Hutchinson issued an execution warrant on February 28, 2017. On March 29, 2017, he filed his complaint seeking injunctive and declaratory relief and challenging section 16-90-506(d)(1) on due-process and separation-of-powers grounds. He filed an amended complaint on April 7, 2017. His execution was scheduled for April 17, 2017. This court granted Ward's petition for an emergency stay on the day of his scheduled execution, and the execution warrant did not take effect. However, this fact does not negate his standing to challenge the constitutionality of section 16-90-506(d)(1). Thus, we hold that Ward has standing to bring this action.
B. Preservation of Ward's Arguments
The State presents two preservation arguments to this court as the basis for affirmance. First, the State argues that this court lacks jurisdiction to consider Ward's due-process argument because the *861 circuit court did not specifically rule on the constitutionality of section 16-90-506 when it dismissed his complaint. Second, the State asserts this court should not consider the merits of Ward's arguments because he challenged fewer than all grounds on appeal.
1. Circuit court's ruling
The relevant facts are as follows. Ward filed his complaint for declaratory and injunctive relief in which he raised inter alia his due-process and separation-of-powers claims. The State filed a motion to dismiss and brief in support alleging that pursuant to Arkansas Rule of Civil Procedure 12(b)(6), Ward's due-process and separation-of-powers claims must be dismissed for failure to state a claim upon which relief could be granted. The circuit court stated in its order that it had considered "Ward's motion for preliminary injunction, complaint, and amended complaint, the defendants' motion to dismiss and response to motion for preliminary injunction, examination of exhibits, and review of the applicable law" in making its rulings. The circuit court also considered the parties' briefs in which the due-process and separation-of-powers arguments were discussed. In its order, the circuit court ruled that it dismissed Ward's complaint on the basis that "defendants have sovereign and statutory immunity, plaintiff has failed to exhaust his administrative remedies, and plaintiff has failed to state a claim for which the court can grant relief."
We have repeatedly stated that the failure to obtain a ruling on an issue at the trial court level, including a constitutional issue, precludes review on appeal. Jackson v. State , 334 Ark. 406, 412, 976 S.W.2d 370, 373 (1998). However, in this case, the circuit court ruled that Ward "has failed to state a claim for which the court can grant relief." This ruling goes to the due-process and separation-of-powers claims that Ward raised in his complaint and amended complaint. Thus, we conclude that the constitutional issues are preserved for our appellate review.
2. Independent grounds
The State asserts that this court should summarily affirm the circuit court's dismissal because Ward challenged fewer than all of the circuit court's independent grounds for dismissal of his complaint. Specifically, the State contends that the circuit court's ruling-that the State was entitled to statutory immunity and that Ward failed to exhaust his administrative remedies-are independent grounds for dismissal of Ward's complaint.
This court has stated that when the circuit court bases its decision on two or more independent grounds and appellant challenges fewer than all of the grounds, the appellate court will affirm without addressing either. Coleman v. Regions Bank , 364 Ark. 59, 64, 216 S.W.3d 569, 573 (2005) (citing Pugh v. State , 351 Ark. 5, 89 S.W.3d 909 (2002) ; Pearrow v. Feagin , 300 Ark. 274, 778 S.W.2d 941 (1989) ).
Here, Ward alleged constitutional claims and civil-rights violations in his complaint. In its motion to dismiss, the State asserts that "[t]he civil-rights allegations are flawed for a number of ... reasons." As defenses to those civil-rights allegations, the State asserted (1) Ward's failure to "exhaust the administrative remedies that are mandatory for ADC inmates attempting to bring such claims" and (2) its immunity status pursuant to the Arkansas Civil Rights Act. These two grounds for the circuit court's dismissal-the exhaustion of remedies and sovereign immunity-applied only to the civil-rights allegations that Ward raised in the complaint, and Ward does not raise these two issues on appeal to this court. Accordingly, we hold that Ward's due-process and separation-of-powers arguments are properly preserved.
*862 III. Ward's Arguments
On appeal, Ward argues that the circuit court clearly erred in granting the State's motion to dismiss his complaint. He contends that section 16-90-506(d) violates his right to due process under the United States and Arkansas Constitutions and violates the doctrine of separation of powers under the Arkansas Constitution.[2]
A. Standard of Review
The general rule in cases involving the constitutionality of a statute is that the statute is presumed constitutional, and the burden of proving otherwise is upon the challenger of the statute. Kellar v. Fayetteville Police Dep't , 339 Ark. 274, 5 S.W.3d 402 (1999). "Because statutes are presumed to be framed in accordance with the Constitution, they should not be held invalid for repugnance thereto unless such conflict is clear and unmistakable." Id. at 279, 5 S.W.3d 402.
B. Due Process
For the first point on appeal, Ward argues that section 16-90-506(d)(1) is unconstitutional, both on its face and as applied, and violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and article 2, section 9 of the Arkansas Constitution. Specifically, Ward contends that section 16-90-506(d)(1) unconstitutionally delegates the competence inquiry to the Director and denies an incompetent prisoner "any access to the courts to obtain the evidentiary hearing necessary to determine the question of his competence to be executed." He asserts that he "must be afforded access to a court capable of hearing evidence ... to make a 'substantial threshold showing' to obtain the requisite 'fair hearing' in accordance with fundamental fairness," as required by the Court's holdings in Ford and Panetti . Ward urges this court to adopt minimum procedures to comply with Ford and Panetti .
There are two different ways to challenge the constitutionality of a statute. First, a plaintiff can make an as-applied challenge, in which the court assesses the merits of the challenge by considering the facts of the particular case in front of the court, not hypothetical facts in other situations. Laymon v. State , 2015 Ark. 485, at 3, 478 S.W.3d 203, 205. Second, a plaintiff can make a facial challenge, which seeks to invalidate the statute itself. Id. Facial invalidation of a statute is appropriate if it can be shown that "no set of circumstances exists under which the statute would be valid." Martin v. Kohls , 2014 Ark. 427, at 11, 444 S.W.3d 844, 850 (quoting United States v. Salerno , 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ). Because the circuit court dismissed Ward's complaint without a hearing, the only issue for this court's review is whether the statute is facially unconstitutional. We do not determine whether the statute is unconstitutional as applied to Ward.
1. Federal law
We first examine the applicable federal law. "[T]he Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane." Ford , 477 U.S. at 409-10, 106 S.Ct. 2595. In Ford , the Court heard the appeal of Ford, a Florida death-row inmate, who challenged Florida's statutory scheme "governing the determination of competency of a condemned inmate," which included a "single meeting" of three psychiatrists, who made three different diagnoses and filed their separate reports *863 with the governor, who ultimately rendered a final decision on competency. Id. at 403-04, 106 S.Ct. 2595. The Court concluded that Florida's procedures "for determining sanity [were] inadequate." Id. at 416, 106 S.Ct. 2595. Justice Powell, in a concurrence to the four-justice plurality opinion, stated that "the Eighth Amendment forbids the execution only of those who are unaware of the punishment they are about to suffer and why they are to suffer it." Id. at 422, 106 S.Ct. 2595. He maintained that a state "may require a substantial threshold showing of insanity merely to trigger the hearing process." Id. at 426, 106 S.Ct. 2595.
Later, in Panetti , 551 U.S. 930, 127 S.Ct. 2842, the Court reviewed Panetti's Ford claim vis-à-vis a similar statutory scheme in Texas. In Panetti , the petitioner raised an incompetency claim after his execution date had been set, and he pursued that claim to no avail in both the state court and the federal courts. The Court held that Texas procedures for preventing the execution of insane individuals "failed to provide ... the minimum process required by Ford ." 477 U.S. at 416-17, 106 S.Ct. 2595. The Court acknowledged that Ford "did not set forth a precise standard for competency." Id. at 956-57, 127 S.Ct. 2842. On the procedural due-process requirements for a competency determination, the Eighth Circuit succinctly explained,
Panetti instructs that " 'a constitutionally acceptable procedure may be far less formal than a trial.' " Panetti , 551 U.S. at 949, 127 S.Ct. 2842 (quoting Ford , 477 U.S. at 427, 106 S.Ct. 2595 ) (Powell, J., concurring). The "basic requirements" of due process include "an opportunity to submit 'evidence and argument from the prisoner's counsel, including expert psychiatric evidence that may differ from the State's own psychiatric examination.' " Id. at 950, 127 S.Ct. 2842 (quoting Ford , 477 U.S. at 427, 106 S.Ct. 2595 ); see also Panetti , 551 U.S. at 951, 127 S.Ct. 2842 ("[The state court] failed to provide petitioner with an adequate opportunity to submit expert evidence in response to the report filed by the court-appointed experts."); Ford , 477 U.S. at 424, 106 S.Ct. 2595 (Powell, J., concurring) (explaining that the determination of sanity "appear[ed] to have been made solely on the basis of the examinations performed by state-appointed psychiatrists").
Cole v. Roper , 783 F.3d 707, 710-11 (8th Cir. 2015). Because the Panetti court concluded that Panetti's constitutional claims needed to be resolved, the Court reversed and remanded for further proceedings in the federal district court. Panetti , 551 U.S. at 962, 127 S.Ct. 2842.
2. State law
Next, we review the applicable state law. Ward contends that section 16-90-506(d)(1) is unconstitutional because it violates his due-process rights under the federal and state constitutions. Specifically, Ward contends that the statutory scheme mandated in section 16-90-506(d)(1) erroneously places the Director as the arbiter of a competency decision without an evidentiary hearing.
Section 16-90-506(d)(1) provides,
(d)(1)(A)(i) When the Director of the Department of Correction is satisfied that there are reasonable grounds for believing that an individual under sentence of death is not competent, due to mental illness, to understand the nature and reasons for that punishment, the Director of the Department of Correction shall notify the Deputy Director of the Division of Aging, Adult, and Behavioral Health Services of the Department of Human Services.
(ii) The Director of the Department of Correction shall also notify the Governor of this action.
*864 (iii) The Division of Aging, Adult, and Behavioral Health Services of the Department of Human Services shall cause an inquiry to be made into the mental condition of the individual within thirty (30) days of receipt of notification.
(iv) The attorney of record of the individual shall also be notified of this action, and reasonable allowance will be made for an independent mental health evaluation to be made.
(v) A copy of the report of the evaluation by the Division of Aging, Adult, and Behavioral Health Services of the Department of Human Services shall be furnished to the Mental Health Services Section of the Division of Health Treatment Services of the Department of Correction, along with any recommendations for treatment of the individual.
(vi) All responsibility for implementation of treatment remains with the Mental Health Services Section of the Division of Health Treatment Services of the Department of Correction.
(B)(i) If the individual is found competent to understand the nature of and reason for the punishment, the Governor shall be so notified and shall order the execution to be carried out according to law.
(ii) If the individual is found incompetent due to mental illness, the Governor shall order that appropriate mental health treatment be provided. The Director of the Department of Correction may order a reevaluation of the competency of the individual as circumstances may warrant.
(2) When the Director of the Department of Correction is satisfied that there are reasonable grounds for believing that a female convict under sentence of death is pregnant, he or she shall suspend the execution until it appears that she is not pregnant or until she has delivered the child.
Ark. Code Ann. § 16-90-506(d)(1) (emphasis added).
In Arkansas, the standard for determining competency for purposes of execution is whether a condemned person understands "the nature and reasons for that punishment." Ark. Code Ann. § 16-90-506(d)(1)(A)(i). In Singleton v. Endell , 316 Ark. 133, 870 S.W.2d 742 (1994), this court decided whether Singleton was entitled to a hearing as provided in Ford , 477 U.S. 399, 106 S.Ct. 2595. The circuit court had denied the relief requested by Singleton, and this court affirmed. We considered only Singleton's challenge that section 16-90-506(d)(1) was procedurally insufficient to comply with the requirements of Ford and stated that "[w]e cannot know that Mr. Singleton and his counsel would be precluded from participating and presenting evidence of his insanity if such a hearing were held pursuant to § 16-90-506(d)(1)." Singleton , 316 Ark. 133, 870 S.W.2d at 747. We emphasize that our decision in Singleton predates the Court's decision in Panetti , 551 U.S. 930, 127 S.Ct. 2842. Since Singleton , this court has not revisited the constitutionality of section 16-90-506(d)(1).
3. Analysis
Mindful of this well-established precedent, we review the language of section 16-90-506(d)(1)(A) :
(d)(1)(A)(i) When the Director of the Department of Correction is satisfied that there are reasonable grounds for believing that an individual under sentence of death is not competent, due to mental illness, to understand the nature and reasons for that punishment, the Director of the Department of Correction shall notify the Deputy Director of the Division of Aging, Adult, and Behavioral Health Services of the Department of Human Services.
*865 This statutory provision authorizes the Director to initiate a determination of competency "[w]hen the Director ... is satisfied that there are reasonable grounds for believing that [the death-row inmate] is not competent," and at that time, "the Director ... shall notify the Deputy Director of the Division of Aging ... of ... [DHS]."[3] Simply put, section 16-90-506(d)(1)(A) is devoid of any procedure by which a death-row inmate has an opportunity to make an initial "substantial threshold showing of insanity ... to trigger the hearing process" pursuant to Ford , 477 U.S. at 426, 106 S.Ct. 2595. Nor does the language of section 16-90-506(d)(1)(A) provide for an evidentiary hearing that comports with the fundamental principles of due process, as articulated in Ford and Panetti . Therefore, we hold that section 16-90-501(d)(1) is unconstitutional on its face and violates the due-process guarantees of the United States and Arkansas Constitutions. We overrule Singleton , 316 Ark. 133, 870 S.W.2d 742, to the extent that it conflicts with our holding in this opinion.
Because we reverse the circuit court's dismissal and hold that section 16-90-506(d)(1) is unconstitutional, we decline to address Ward's remaining argument on the doctrine of separation of powers.
IV. Conclusion
We reverse the circuit court's dismissal of Ward's complaint and remand to the circuit court for further proceedings consistent with this opinion.
Hart, J., concurs.
Baker, Wood, and Womack, JJ., dissent.
I agree with the decisions reached by Justices Kemp, Goodson, and Wynne in rejecting the State's procedural arguments in the case at bar.
First, the State argues that Ward lacks standing to challenge the constitutionality of the Director's Statute. I disagree. Ward has standing to argue the constitutionality of Ark. Code Ann. § 16-90-506(c) - (d) (the "Director's Statute") because he is under sentence of death and has a personal stake in the determination of the Director's Statute's constitutionality. Furthermore, the State asserts that the Director's Statute is the only means by which Ward can raise the issue of his insanity, yet the State cannot identify any provision of the Director's Statute that Ward has failed to satisfy in order to invoke any right or protection it might supply to him.
Second, the State argues that Ward's challenge to the constitutionality of the Director's Statute is barred for failing to obtain a ruling on the constitutionality argument. I disagree; the circuit court did rule upon Ward's arguments as to the Director's Statute's constitutionality. The circuit court's holding that Ward "has failed to state a claim for which the court can grant relief" goes directly to Ward's claims regarding the constitutionality of the Director's Statute and the State's corresponding argument raised in its motion to dismiss, which asserted that Ward's constitutional challenges should be rejected specifically pursuant to Arkansas Rule of Civil Procedure 12(b)(6) for failure to state a legally cognizable claim.
Third, the State argues that Ward's challenge to the Director's Statute's constitutionality *866 is barred for failing to appeal independent grounds that would adequately dispose of his constitutional claims. I disagree. The grounds in question are the circuit court's holdings that the State has "statutory immunity" and that Ward has "failed to exhaust his administrative remedies." Statutory immunity and failure to exhaust administrative remedies are issues that would pertain to Ward's civil-rights claims under 28 U.S.C. § 1983, but they have no legal bearing upon Ward's claims that the Director's Statute is unconstitutional or his ability to appeal the circuit court's dismissal thereof.
Finally, as to the merits of Ward's arguments on appeal, I join the disposition reached by Justices Kemp, Goodson, and Wynne. The Director's Statute does not satisfy federal due process requirements, but I write separately for the reasons stated in my concurring opinion in Greene v. Kelley , 2018 Ark. 316, (Hart, J., concurring), handed down on this same day. Accordingly, it is unnecessary to address Ward's argument regarding the separation of powers.
I dissent from the majority opinion because the majority errs in its holding regarding the justiciability of Ward's claim and fails to adhere to the doctrine of stare decisis.
First, the majority neglects to address the procedural problem in this case. On February 27, 2017, Governor Asa Hutchinson scheduled Ward's execution for April 17, 2017. On March 29, 2017, Ward filed a complaint for declaratory and injunctive relief in the Jefferson County Circuit Court. The complaint alleged that Ward was incompetent to be executed under Ford v. Wainwright , 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), and Panetti v. Quarterman , 551 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007). The complaint further alleged that Ark. Code Ann. section 16-90-506(d)(1) violated his due-process rights by allowing the Director of the Arkansas Department of Correction to make the threshold determination of competence to be executed. However, Ward did not request a competency determination of any kind from Kelley with respect to his 2017 execution, while Ward requested a determination when Ward was set to be executed on October 21, 2015. Further, after filing his lawsuit on March 29, 2017, Ward scheduled a psychological examination to be conducted on April 1, 2017, by his own expert, but then cancelled the April 1, 2017, examination, and postponed it for a later date. However, Ward never rescheduled the examination. In Cummings v. City of Fayetteville , 294 Ark. 151, 154-55, 741 S.W.2d 638, 639-40 (1987), we explained that "the declaratory judgment statute ... does not undertake to decide the legal effect of laws upon a state of facts which is future, contingent or uncertain." Accordingly, this court should not undertake determining the legal effects of the law upon what may happen in the future with regard to Ward's competency.
Second, I dissent from the majority opinion because the majority has failed to adhere to the doctrine of stare decisis. "As a general rule, we are bound to follow prior case law under the doctrine of stare decisis, a policy designed to lend predictability and stability to the law. Ward v. State , 2015 Ark 62, at 5, 455 S.W.3d at 833." Ward v. State , 2018 Ark. 59, 5, 539 S.W.3d 546, 549. In the absence of a palpable error in legal analysis, prior precedent governs unless the result is patently wrong or manifestly unjust. Ward v. State , 2015 Ark. 62, 455 S.W.3d 830 ; Nooner v. State , 2014 Ark. 296, 438 S.W.3d 233.
Yet, despite this long-established precedent, the majority ignores this doctrine.
*867 Simply put, Singleton is controlling of Ward's facial challenge to section 16-90-506(d)(1) on due-process grounds and the majority ignores Singleton . The majority states: "Since Singleton , this court has not revisited the constitutionality of section 16-90-506(d)(1)." This statement is not supportive of its analysis because although Singleton was issued prior to the Supreme Court's opinion in Panetti , the Panetti decision did not expand the holding in Ford to require states to provide due-process protection at the pre-threshold stage of a competency determination. It was not controverted in Panetti that the defendant had made a substantial threshold showing of his incompetence. Thus, the issue in that case was not the pre-threshold inquiry but rather the correct standard by which to determine the defendant's competence. Although Panetti clarified that the defendant must have a rational understanding of the reason for his execution, it did not alter the procedural due-process requirements set forth in Ford . Simply put, Singleton is controlling. Therefore, the circuit court did not err by dismissing Ward's facial challenge to section 16-90-506(d)(1) on due-process grounds and I would affirm the circuit court.
Wood and Womack, JJ., join.

Ward refers to section 16-90-506(d)(1) as the "Director's Statute," while the State introduces section 16-90-506(d)(1) as the "Stay of Execution" statute. This opinion references the statute by its section number.

Ward does not appeal the circuit court's ruling denying his motion for a preliminary injunction. Nor does he appeal the circuit court's rulings on the claims concerning solitary confinement and the circuit court's ruling on the exhaustion of remedies.

In oral argument, the State relied heavily on historical practices of the Director to review the mental-health file of the death-row inmate to justify the statutory procedures set forth in section 16-90-506(d)(1)(A). However, we do not glean this specific process in the express language of section 16-90-506(d)(1)(A), nor do we take judicial notice of it.